# EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *v.* BROWN.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 74.  Argued January 13, 14, 1909.—Decided March 1, 1909.

A life insurance company which has several hundred thousand policy-holders is in its nature a public institution, and where there is no apprehension as to its solvency, a court of equity will consider all the facts as to the relative advantages and disadvantages of a receivership or accounting before granting relief of that nature in the suit of an individual policyholder even if jurisdiction to grant such relief exists.

The fact that stockholders claim the surplus of an insurance company and the officers of the company do not actively deny the claim gives no ground for a receivership at the suit of a policyholder claiming that the surplus belongs to the policyholders.

A demurrer only admits facts well pleaded in the pleading demurred to; it does not admit the pleader's conclusions of law or the correctness of his opinions as to future results.

The construction of a general act and a charter granted thereunder pertain to the state court just as if the charter were granted by a special act; and in a suit by the holder of a policy, executed at the home office, the meaning and construction of the charter as held by the state court will be binding on the Federal courts, and, in the absence of any Federal question, the construction of the contract by the state court will be of most persuasive influence even if not of binding force.

The wrongdoing of former officers of an insurance company, and their continuance in power, in the absence of any trust relation, gives no jurisdiction for an accounting in equity in a suit in which the company is the only defendant as between a simple debtor and creditor.

The Equitable Life Assurance Society is not a trustee of its policyholders under its charter and policies as the same have been construed by the highest courts of the State of New York.

As the charter and contract have been construed by the highest court of New York, a policyholder in the Equitable Life Assurance Society can only participate in the surplus of the society according to the terms of the policy; and a discretion rests with the officers of the society as to what amount of surplus shall be retained and distributed, and when the distribution shall be made.

While wrongdoing, waste, and misapplication of funds reducing the surplus of an insurance company before distribution, might give ground of action to a policyholder, it would not necessarily, where there is no allegation of insolvency, give ground for equitable action.

Where the bill avers solvency of defendant at present, a prediction of insolvency in the future on account of inability to meet claims of policyholders by reason of mismanagement is a mere conclusion of law and not a fact which is admitted by demurrer or on which a court can grant equitable relief.

Where a suit for accounting by a policyholder against an insurance company as sole defendant avers that the stockholders claim to own the surplus, no decree can be made as to such ownership without the presence of the stockholders as parties.

Equity does not now take jurisdiction in cases of fraud where the relief properly obtainable on that ground can be obtained in a court of

law, and where, so far as necessary, discovery may be obtained as well as in equity. Rev. Stat., § 724; *United States* v. *Bitter Root Co.*, 200 U. S. 451.

A complainant who can obtain all the relief to which he is entitled in a single suit cannot invoke the interference of a court of equity on the ground that defendant may be saved a multiplicity of suits against it by others situated similarly to himself.

151 Fed. Rep. 1, reversed.

THIS case comes here on writ of certiorari, which brings up the record from the Circuit Court of Appeals for the Second Circuit, reversing the decree of the Circuit Court for the Southern District of New York, which sustained the petitioner's demurrer to the plaintiff's bill and dismissed the same. The opinion of the Circuit Court is reported in 142 Fed. Rep. 835, and that of the Circuit Court of Appeals, 151 Fed. Rep. 1.

The bill was filed against the defendant (the petitioner above named) some time in August, 1905, and is one of extreme length, and makes allegations in great detail relating to the conduct of the business of the defendant by its board of directors and by its officers and agents for many years prior to the filing of the bill. It will not be necessary to repeat all of them in order to understand the case as made. The following facts, among many others of a similar nature, appear in the bill:

The complainant is a citizen of the State of Maryland and brings this suit in behalf of himself, as well as all the policyholders and annuitants of the company defendant, who may choose to come in and join therein; the defendant is a citizen of the State of New York and an inhabitant of the Southern District thereof.

The defendant was incorporated in May, 1859, under a general law of the State of New York, passed June 24, 1853, providing for the incorporation of life and health insurance companies. In accordance with this act there was filed by the incorporators a declaration, in the nature of a charter, from which it appears that the capital of the defendant was $100,000 in cash, divided into 1,000 shares of $100 each, and the corpo-

rate powers of the company were vested in a board of directors.
The insurance business was to be conducted upon the mutual
plan. The holders of the capital stock were, by the declaration,
to have the right "to receive a semi-annual dividend on the
stock so held by them, not to exceed three and one-half per
cent of the same; such dividends to be paid at the times and in
the manner designated by said directors of the company. The
earnings and receipts of said company, over and above the
dividends, losses and expenses, shall be accumulated."

The officers were to strike a balance every five years from
December 31, 1859, which was to exhibit its assets and lia-
bilities and also the net surplus, after deducting a sufficient
amount to cover all outstanding risks and other obligations.
Each policyholder was to be credited with an equitable share
of the surplus, which was to be applied to the purchase of an
additional amount of insurance for each policyholder, or, if any
policyholder should so direct, such equitable share of the sur-
plus should be applied in his case to the purchase of an annuity.

The complainant took out a policy in the company on the
twenty-eighth of December, 1867, for $25,000, in the form of an
ordinary life policy, which was subsequently, and on the twelfth
of January, 1876, changed to another ordinary life policy, pay-
able to his wife upon his death, and if his wife were not then
living, then to the children of complainant, and if there were
no children, then to the complainant's executors, administra-
tors or assigns. The policy was also issued and accepted upon
certain conditions printed on its back, which were accepted as
a part of the contract, among which provisions is the following:

"6. This policy, during its continuance, shall be entitled to
participate in the distribution of the surplus of this society, by
way of increase to the amount insured, according to such prin-
ciples and methods as may, from time to time, be adopted by
this society for such distribution, which principles and methods
are hereby ratified and accepted by and for every person who
shall have or claim any interest under this contract, but the
society may, at any time before a forfeiture, upon the request

of the person holding the absolute legal title to this policy, substitute a cash payment, to be fixed by said society, in lieu of the said increase to the amount insured, and such payment may be made by reduction of subsequent premiums, if said policyholders shall so elect."

The complainant elected to receive his share of the surplus, as ascertained from time to time, in the reduction of the premium, and the company was notified of that election and ratified and accepted the same, and since the date of the issuing of the policy the complainant has regularly paid the premiums thereon as they severally accrued, after deducting the sums which at each period the officers of the defendant stated to be the entire amount applicable in reduction of the premiums as complainant's equitable share in the surplus. Although the complainant has been entitled to have his full share of the lawfully ascertained and true surplus profits of the defendant applied in reduction of his premium, yet the amounts allowed by the officers of the defendant in reduction of his premium have not been the real amounts of complainant's equitable share in the true surplus, but by means of the abuse of discretion, wrongs, and the inequitable and fraudulent conduct of the defendant, its officers and agents, the company, its officers and stockholders, have wrongfully retained and to the extent of a large sum, fraudulently wasted and misappropriated to themselves a large portion of complainant's share in said surplus; that he has accepted such reductions of premium as have been from time to time assigned to him solely because of his belief that the officers of the defendant were acting in a just and lawful manner, and in reliance upon the representations of the officers of the defendant thereto, stating that he was receiving his lawful share of the true surplus, which representations were untrue and fraudulent and without knowledge by complainant that they were untrue, or of the facts thereafter stated in the bill.

The defendant has, at the expiration of each year since the defendant's incorporation, ascertained and entered upon its books a sum alleged to be the "net surplus" earned by the

defendant during the preceding year, which surplus has been reported annually for many years to the insurance department of the State of New York as the fund which belonged to the policyholders exclusively, and one in which the stockholders were without any interest whatever, while on the other hand the defendant now claims that such surplus belongs to its stockholders.

The defendant, through its officers, has been crediting and paying to its policyholders, from time to time, only a portion of the surplus admitted to exist by the defendant, and to the whole amount of which complainant and the other policyholders are entitled in equitable proportion, and the officers, contrary to the rights of the policyholders and in fraud of their rights, have not credited the policyholders with their equitable share of the surplus, although such surplus has been duly ascertained from their books, nor have they paid policyholders whose policies matured from time to time their just and equitable share of such surplus to which they were entitled, and the stockholders now claim and threaten to appropriate all the surplus as a dividend, or earning, upon the shares of stock of the company, in direct disregard of the representations made by the defendant to the superintendent of insurance of the State and in disregard of the rights of the policyholders.

From the books it appears that there were in 1904 over 500,000 policyholders; over $1,495,000,000 of insurance risks; over $413,000,000 of assets; liabilities over $333,000,000, and a surplus of over $80,000,000. That there are over $10,000,000 of the surplus in which the stockholders can have no interest and which are still claimed by them. The retention of the surplus has been wrongful and for the fraudulent purpose to pile up a fund under the control of the defendant and its officers, by the use of which they could secure illegal and personal gain, and out of which they could distribute large sums to and among themselves under pretense of payment of salaries and expenses, by improper and extravagant disbursements, and

that in fact they have distributed to themselves improper and extravagant salaries, commissions and expenses from the fund or surplus which belonged to the policyholders. Great waste and extravagance are alleged to have been committed by the defendant through its officers in many ways. The officers of defendant have failed to properly invest and reinvest the funds of the company, but have willfully and negligently misappropriated and fraudulently mismanaged them.

About January, 1905, dissensions among the officers and board of directors occurred, and in consequence a committee of the defendant was appointed for the purpose of investigating its affairs and condition, and the superintendent of insurance also conducted an investigation, and the results showed the facts above stated in very great detail. A committee of the legislature also investigated the condition of the defendant during the fall of 1905 and reported to the legislature in 1906, showing the same facts.

Mr. Thomas F. Ryan in the meantime had become the owner of 502 shares of the stock of the defendant (a majority thereof), with a par value of $50,200, which were purchased by him for $2,500,000, and thereupon he executed a deed of trust to three trustees, with power to vote the stock as stated in the deed, and since that time Ryan has been the managing spirit in the defendant. Twenty directors have been elected to fill vacancies in the board of directors and are serving thereon, but the right to do so is denied by the complainant and the minority stockholders, and until such questions are settled by the determination of a court of final jurisdiction there does and will exist absolute confusion and corporate anarchy in the management of the affairs of the defendant.

If properly conducted the defendant has sufficient assets to provide for and liquidate every outstanding policy and to insure the performance of every contract made by the defendant with its annuitants. It is subsequently averred that the defendant is insolvent, because it is responsible to the policyholders for the excessive sums paid in the way of salaries and

fees, and also for all sums of money lost consequent upon fraud and waste, and such amounts are said to be more than the defendant will have funds to meet when proved and demanded. (This, by way of opinion and prediction.)

The defendant is still in the control of the stockholders, whose representatives have been guilty of misappropriation and its business is at a standstill. The interests of the policyholders are to place the assets in the hands of a receiver, in order to wind up the affairs of the defendant, which is the only way to safeguard the policyholders' interests. An action at law is inadequate to afford proper relief and there would result, if such actions were necessary, a multiplicity of suits.

As relief, the bill prayed for the production of all books, papers and records of the defendant, and that an accounting be had of all the dealings and transactions of the defendant, its officers and agents and stockholders, from the commencement of the business of the defendant in 1859, or for such period as the court might deem proper. Also, that a trust be adjudged and declared to exist and imposed upon the assurance funds and surplus, as ascertained, as against the defendant, its officers and stockholders, and that it be adjudged that they, and each of them, hold the same as trustees for such persons as shall be declared to have interests therein under the decree to be entered in the cause. Such accounting should also be taken for the purpose of ascertaining to what extent the defendant is indebted to the surplus fund on account of damage, loss and depletion occasioned by the negligence, misconduct, misappropriation and other causes averred in the bill. Also, that it be adjudged that the defendant pay into such assurance fund the amount ascertained on such accounting to be due from the defendant, to such fund, and that the defendant, its directors, officers and agents, be enjoined from further retaining the control of or spending in any way the said funds received from the policyholders and annuitants, and constituting the assurance fund and the so-called surplus of the company, and also from doing any other act or thing in

connection with the funds of the defendant, except to transfer the same to a receiver, and that a receiver be appointed to take possession of all the funds held by the defendant, of every character and description, and administer and distribute the same, as he may be directed by the court.

The defendant demurred to this bill (1) for want of equity; (2) complainant had an adequate remedy at law; (3) complainant, under the laws of New York, had not legal capacity to sue; (4) complainant had no interest in the subject matter of the bill. Other grounds were stated not specially material now to notice.

*Mr. William B. Hornblower,* with whom *Mr. Allan McCulloh* was on the brief, for petitioner:

A demurrer does not admit the correctness of conclusions of law. *Hollis* v. *Richardson,* 13 Gray, 392; *Cragin* v. *Lovell,* 109 U. S. 199.

A fact impossible in law cannot be admitted by a demurrer. *Wilson* v. *Gaines,* 103 U. S. 417; *Louisville & Nashville R. R.* v. *Palmes,* 109 U. S. 253; *Gould* v. *Evansville &c. R. R. Co.,* 91 U. S. 536.

Where written instruments are set forth and annexed to the complaint a demurrer does not admit the construction placed by the pleader upon such instruments, nor conclusions or inferences drawn by the pleader therefrom. It is for the court to decide whether the construction placed by the pleader upon the instruments, or the conclusions or inferences of the pleader are correct. *Bonnell* v. *Griswold,* 68 N. Y. 294; *Buffalo Catholic Inst.* v. *Bitter,* 87 N. Y. 250; *Bogardus* v. *N. Y. Life Ins. Co.,* 101 N. Y. 337; *Greeff* v. *Equitable Life Assurance Soc.,* 160 N. Y. 19.

Matters of fact well pleaded are admitted by a demurrer, but it is equally well settled that mere conclusions of law are not admitted by such a proceeding. *Dillon* v. *Barnard,* 21 Wall. 430; *Interstate Land Co.* v. *Maxwell Land Co.,* 139 U. S. 577, 578; *Ford* v. *Peering,* 1 Ves. Ch. 71; *Lea* v. *Robeson,* 12

Gray (Mass.), 280; *Redmond* v. *Dickerson*, 1 Stockt. (N. J.) 507; *Murray* v. *Clarendon*, Law Rep. 9 Eq. 17; *Nesbitt* v. *Berridge*, 8 Law Times, N. S., 76; Story, Eq. Plead. (7th ed.), § 452.

Nor does a demurrer admit matters of inference or argument, or the alleged construction of an instrument when the instrument itself is set forth in the record, in cases where the construction assumed is repugnant to the language of the instrument. *Peckham* v. *Drake*, 9 Mees. & W. 78; *Humble* v. *Hunter*, 12 Law Rep. Q. B. 315; *McArdle* v. *The Irish Iodine Company*, 15 Irish C. L. 146; *Sprigg* v. *Bank of Mount Pleasant*, 14 Pet. 201; *United States* v. *Ames*, 99 U. S. 45; *Finney* v. *Guy*, 189 U. S. 343.

As to recitals, statements of what the papers which are made exhibits purport to show, and conclusions of law, the rule is well settled that only matters of fact well pleaded are admitted by a demurrer, while conclusions of law are not. *United States* v. *Ames*, 99 U. S. 35, 45; *Interstate Land Co.* v. *Maxwell Land Grant Co.*, 139 U. S. 569, 578; *Chicot County* v. *Sherwood*, 148 U. S. 536.

The authorities cited also sustain the propositions that opinions of the pleader as to the propriety of defendant's conduct or as to what is or is not the probable consequence of such conduct are not admitted by a demurrer and are of no probative value; also that general allegations of fraudulent or negligent conduct, or wrongful intent are to be disregarded upon demurrer, unless facts are alleged sufficient to substantiate the allegations.

Whether it be a charge of omission or commission the facts are not alleged, and a mere charge of negligence whether of omission or commission is charging a legal conclusion which is not admitted by the demurrer. *Knowles* v. *New York*, 176 N. Y. 430; *Talcott* v. *Buffalo*, 125 N. Y. 280; *Thomas* v. *N. Y. & G. L. R. Co.*, 139 N. Y. 163, 182; *O'Brien* v. *Fitzgerald*, 6 App. Div. 509, 513; *Franklin Fire Ins. Co.* v. *Jenkins*, 3 Wend. 130; *Van Schaick* v. *Winne*, 16 Barb. 89; *Kranz* v. *Lewis*, 115

App. Div. 106; 88 N. Y. 579; *People* v. *Equitable Life Ass. Soc.,* 124 N. Y. App. Div. 732.

Allegations of fraud, unsupported by facts fairly tending to sustain the charge, are insufficient. *Schiefer* v. *Freygarg,* 125 N. Y. App. Div. 498.

This society, being a corporation of the State of New York, organized under the laws of New York, the decisions of the highest court of that State, construing its charter and determining the rights of policyholders under the charter and under the laws of the State, will be followed by this court as authoritative and indeed conclusive where no question arising under the statutes or Constitution of the United States is involved. Rev. Stat., § 721; *Elmendorf* v. *Taylor,* 10 Wheat. 153, 159; *United States* v. *Morrison,* 4 Pet. 124, 137; *Green* v. *Neal,* 6 Pet. 291; *Wicomico Co.* v. *Bancroft,* 203 U. S. 112, 118.

A charter granted by special act to a corporation is simply a particular kind of statute. Therefore, the Federal courts hold themselves bound to follow the interpretation placed upon a corporation charter contained in an act of the legislature by the highest court of the State which enacted it. *Smith* v. *Kernochan,* 7 How. 198; *Stone* v. *Wisconsin,* 94 U. S. 181; *Cleveland, P. & A. R. Co.* v. *Franklin Canal Co.,* 5 Fed. Cas. No. 2,890; *Venner* v. *Atchison, T. & S. F. R. Co.,* 28 Fed. Rep. 581, 582, 586; *New Orleans W. W. Co.* v. *Southern Brew. Co.,* 36 Fed. Rep. 833, 834, 836; *Stone* v. *Wisconsin,* 94 U. S. 181, 183; *Waterworks Co.* v. *Refinery Co.,* 35 La. Ann. 1111.

The same principle applies to the construction of "Articles of Incorporation" drawn up under a general statute authorizing the incorporation of certain classes of corporations.

The corporate rights and liabilities growing out of such articles are to be determined by the courts of the State under whose laws the corporation is organized. *Polk* v. *Mutual Reserve* (C. C. S. D., N. Y.); *Merrimac Mining Co.* v. *Levy,* 54 Pa. St. 227 *et seq.; Clark* v. *Turner,* 73 Georgia, 1; *First National Bank* v. *Converse,* 200 U. S. 425.

The United States courts have invariably followed the state

decisions on all questions concerning corporations, where no Federal question was involved. See 11 Cyc. 903–907. See also *Secombe* v. *Railroad Company*, 23 Wall. 108; *Hancock* v. *Louisville Railroad Co.*, 145 U. S. 409; *Park Bank* v. *Remsen*, 158 U. S. 337; *Sioux City Railroad Co.* v. *N. A. Trust Co.*, 173 U. S. 99; *Williams* v. *Gaylord*, 186 U. S. 157; *Schofield* v. *Goodrich Bros.*, 39 C. C. A. 76; *S. C.*, 98 Fed. Rep. 271.

The defendant is organized under the laws of New York. Every person who has joined it as a policyholder has entered into his contract upon the basis of the laws of New York, as limited only by the Constitution and statutes of the United States. Every person becoming a policyholder since the decisions in the *Uhlman Case*, 109 N. Y. 421, and in the *Greeff Case*, 160 N. Y. 19, has had a right to rely upon and is bound by those decisions as part of the law of the State and, therefore, part of his contract. Every such person has presumably entered into his contract in the faith that it was the right and the duty of the society's officers "to retain out of its surplus an amount sufficient to insure the security of its policyholders, in the future as well as at present, and to cover any contingencies that might arise or be fairly anticipated" (160 N. Y. 34), and subject to the ruling that the relations of a policyholder to the company are not those of *cestui que trust* and trustee, but simply that of creditor and debtor. 109 N. Y. 421.

So far as the bill in this suit is based upon any alleged failure to comply with its charter or contract obligations as to the distribution of its entire net surplus, the bill is clearly demurrable under the rulings of the Court of Appeals of New York in *Greeff* v. *Equitable Life Ass. So.*, 160 N. Y. 19.

So far as the bill is based upon the theory of a trust relationship between the policyholders and the society, it is at variance with the settled law of New York as laid down by a long and unbroken line of decisions, culminating in the Uhlman decision.

The relation between the parties arises solely from the contract by the terms of which their rights must be governed.

The insurance company is not a trustee for the insured, even in case of a tontine policy, much less in the case of an ordinary life policy, such as that held by complainant. If the terms of the contract are violated by the petitioner the remedy of the policyholder is by an action at law to recover damages for breach of contract. *Uhlman* v. *N. Y. Life Ins. Co.*, 109 N. Y. 421; *Everson* v. *Equitable Life*, 68 Fed. Rep. 258; aff'd, U. S. Cir. Ct. App., 71 Fed. Rep. 570; *Hunton* v. *Equitable Life*, 45 Fed. Rep. 661; *St. John* v. *American Mutual Life Ins. Co.*, 13 N. Y. 31; *Cohen* v. *Mutual Life Ins. Co.*, 50 N. Y. 610; *People* v. *Security Life Ins. Co.*, 78 N. Y. 114; *Taylor* v. *Charter Oak Life Ins. Co.*, 9 Daly, 489; aff'd, 8 Abb. N. C. 331; *Bewley* v. *Equitable Life*, 61 How. Pr. 344; *Buford* v. *Equitable Life*, 98 N. Y. Supp. 152; *Pierce* v. *Equitable Life*, 145 Massachusetts, 56; *Greeff* v. *Equitable Life*, 160 N. Y. 19.

The bill cannot be sustained as a bill for fraud because, so far as any fraud affecting complainant's rights is concerned, he has an adequate remedy at law. *Insurance Co.* v. *Bailey*, 13 Wall. 616, 623; *Buzard* v. *Houston*, 119 U. S. 347, 352; *London Guarantee Co., Ltd.,* v. *Doyle*, 130 Fed. Rep. 719; *United States* v. *Bitter Root Co.*, 200 U. S. 451.

Nor does the fact that the bill also seeks discovery and an accounting, make a case for jurisdiction in equity.

Discovery and accounting are no longer sufficient ground for equitable jurisdiction in aid of relief of a legal character. Rev. Stats., § 724; *Stafford* v. *Ensign Mfg. Co.*, 120 Fed. Rep. 480; see also cases *supra.*

So far as the bill is based upon mismanagement and waste of corporate assets by the directors and officers, the only cause of action set forth in the bill is one which should be brought in the name of and for the benefit of the society as a corporation and not in the name of or for the benefit of policyholders who are merely contract creditors and who have not obtained any lien on the assets by way of judgment or otherwise and who have no claim as *cestuis que trustent*, as is perfectly well settled by all the cases. *Graham* v. *Railroad Co.*, 102 U. S. 148.

Furthermore, it is manifestly impossible to decree an accounting in this suit based upon waste of the society's assets. If this bill is to be sustained either as a bill to recover assets wasted by the officers of the society, or as a bill for a receiver and to wind up the society, there is a clear defect of parties defendant and those officers should be joined. *Minnesota* v. *Northern Securities*, 184 U. S. 199, 235; *Christian* v. *Atlantic & N. C. R. R. Co.*, 133 U. S. 233, 241; *Gregory* v. *Stetson*, 133 U. S. 579, 586.

It is the duty of the courts, and particularly of courts of equity, to protect insurance companies from merely harassing and annoying litigations which can be of no substantial benefit to the policyholders.

A court of equity has the right and is bound to consider the relative advantages and disadvantages of granting equitable relief. *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 317.

It withholds the remedies if the result would be unjust, but freely grants them to prevent injustice where the other courts are helpless. *McClure* v. *Leaycraft*, 183 N. Y. 36, 41; *New York* v. *Pine*, 185 U. S. 93; *Penryhn Slate Co.* v. *Granville El. L. & P. Co.*, 181 N. Y. 80; *Knoth* v. *Manhattan Ry. Co.*, 187 N. Y. 243.

*Mr. John R. Dos Passos*, with whom *Mr. Joseph De F. Junkin*, *Mr. George Gordon Battle* and *Mr. H. Snowden Marshall* were on the brief, for respondent:

A trust relation arose, *ab origine*, between the respondent and petitioner, as to the corpus of the property in the possession of the society; and the policy of insurance is in effect a deed of trust, when read in connection with the acts under which the society is incorporated, and its charter and rules. See act of June 24, 1853, chap. 555, Laws of New York, under which petitioner was incorporated; Insurance Laws, § 71. No other relation but that of trust can be evolved from the documents above cited.

An analysis of the relations which the society, its stock-

holders and the policyholders bear to each other shows that in
equity and public policy, all of the property of the society save
$100,000 is held by it as trustee for the benefit of the policy-
holders. It is in substance and in equity no different from
any other individual or corporation trustee. The Equitable
was incorporated to effect insurance upon the mutual plan.

It became the agent and trustee of all of the policyholders,
into whose hands are committed the collection, investment and
division of the money of the policyholders, all of which is
stamped with an ineffaceable trust. It was not the money of
the stockholders by which the business of the Equitable Com-
pany has been established. Their so-called capital has been
under lock and key in the office of the comptroller.

The mutual life insurance business is a great public trust,
and between a policyholder and a company created for the pur-
pose of insuring his life there is the purest and completest
fiduciary relationship, and these things being shown, all of the
remedies which a court of equity furnishes for a violation of
a trust, will naturally follow and be promptly and fully ap-
plied. *Charity Corporation* v. *Sutton*, 2 M. & K. R. 406; more
fully in 9 Mod. R. 349; 28 Am. & Eng. Ency. of Law, p. 858;
*Gifford* v. *Rising*, 51 Hun, 3.

The society held itself out as a mutual company. The or-
ganizers were at full liberty to start it as an absolute and un-
qualified stock company. They accepted the mutual plan—
they advertised and represented the society as one conducted
solely on the mutual plan for the benefit and protection of its
policyholders. See *Mygatt* v. *New York Protection Ins. Co.*,
21 N. Y., 55.

This argument is strengthened by the attitude assumed by
the Equitable Society itself. See *Lord* v. *Equitable Life Assur-
ance Co.*, N. Y. Supreme Ct., 2d Div., Sp. Term, and Appellate
Div., 94 N. Y. Supp. 65; *Greeff Case*, 160 N. Y. 19.

Under the allegations of the bill we find Mr. Ryan controls
the society as the majority stockholder. He is in that position
as the result of paying an enormous sum for the shares—either

because he believes he can realize the same from the assets, or because he believes the possession of the assets is equally valuable. This court should declare that the stockholders have no interest in the property of this society except a dividend of 7 per cent and a return of the $100,000.

Mr. Ryan makes an indirect and insidious attack upon the rights of the policyholders: the stockholders, on the other hand, in the Lord suit, claim everything in sight.

Apart from the foregoing, there was a distinct agreement to set aside a separate and definite fund for the stockholders which constitutes a lien in equity which will be enforced and protected.

Upon well-settled grounds of equity the surplus is notwithstanding a security for the benefit, and impressed with a lien in favor of, the insured, who have a clear right to an accounting, and to preserve the property covered by such lien from fraud, misappropriation, diminution, waste, or destruction, by the society. 3 Pomeroy, Equity Jurisprudence, 1235; *Walker v. Brown*, 165 U. S. 664; *Ketcham v. St. Louis*, 101 U. S. 306; *Legard v. Hodges*, 1 Ves. Jr. 478; *In re Strand Music Hall Co.*, 3 De G., J. & S. 147; 2 Story, Equity Jurisprudence, § 1231.

The Equitable Society, petitioner, is at least a trustee as to the surplus, and is to be held to strict accountability for its non-apportionment, waste or disappearance. See charter, Arts. III, IV & VI.; Report of Frick Committee, p. 44; Hendrick Report, pp. 54, 55. See allegations of bill as to surplus.

The complainant fully shows that he is entitled to equitable relief upon the ground, first, of adverse claim by the society and its stockholders as to the title to the surplus, and, second, of fraudulent conduct in the management of the property and surplus in the hands of the company and its misappropriation and waste. See tenth and fourteenth paragraphs of the bill.

The bill shows that the defendant has been guilty of fraud, waste and gross mismanagement of the property of the policy-holders. The different charges are set forth in the bill and are given in detail in the report of the Frick Committee and that of the Superintendent of Insurance; and it is not necessary to

marshal them under specific heads, as they are most prominently treated in the reports above referred to.

These facts fully justify quick and full relief and such a judgment as will render it clear that the assets held by this society belong to the policyholders.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

Even if a court of equity had jurisdiction in a case like this, it is yet proper to consider the history of the defendant subsequent to the filing of the bill by complainant, with reference to the results which might and probably would follow a decree of the court in accordance with the demand of the complainant. The corporation is one of the largest in the world with its more than half million policyholders, its outstanding risks of an amount almost impossible to appreciate, and with assets and liabilities and surplus, reaching into hundreds of millions of dollars in amount. The defendant is in its nature a public institution, and the interests of its policyholders are directly involved in any proceeding looking towards its winding up, and indirectly the interests of many hundreds of thousands of individuals connected with the policyholders as objects of their bounty. The result of a stopping of this institution and the winding up of its business because, although not in necessary consequence, of the flagrant wrongdoing of some of its former officers and directors, would be most disastrous to the great majority of the people interested in its affairs. Taking all the averments of the bill together, there is not any foundation for apprehension as to the entire solvency of defendant. To place the institution in the hands of a receiver, while it is paying promptly all its obligations and with undoubted resources to continue to pay them, and is daily engaged in taking new business, under other and different management, would be a premature and wholly unnecessary ending of the defendant, and one which it would be mild to characterize as

ruinous to the interests of hundreds of thousands of people,
and really beneficial to none. The enormous and very likely
necessary expenses connected with a receivership, its certain
failure to give full satisfaction to all, and the very great delays
that would accompany the granting of the relief asked, are
strong reasons against granting it in the case of a defendant
which is paying all its obligations as they are presented. In
addition to all these objections, it has happened that since
1905 a new board of directors has been chosen, new officers
placed in command and probably an entirely new policy
adopted and followed. Although these last-mentioned facts
have happened since the filing of the bill in 1905, nevertheless
it is not improper to refer to them, as they only constitute a
history of the defendant since that time. They are found in
public documents in New York, filed and existing of record
in its insurance department, and they are the sworn returns of
the officers of the defendant made since the change in 1906.
They may be referred to, not to contradict the averments of
the bill, but to show the officers now in control of the manage-
ment of the defendant, its present condition, and the fact that
it is now in full operation and in the daily discharge of all its
obligations as they are presented. The right to an accounting
in equity and the winding up of the defendant under these cir-
cumstances would have to be most clearly made out before
such relief would be granted. A court of equity is bound to
consider these facts before it would grant relief of the nature
demanded. Such a court takes all the facts into consideration
and the relative advantages and disadvantages of granting a
relief which lies largely in cases of this nature in the discretion
of the court, even if it be assumed that jurisdiction to grant
the relief existed at all.

Under these circumstances we proceed to inquire as to the
jurisdiction of a court of equity in such a case as is presented
by the bill. It might be here added that the history of the
*Lord case*, which is referred to in the bill, is to be found in 57
N. Y. Miscell. Rep. 417, and on appeal in 126 App. Div. 907,

and a still further appeal is pending in the New York Court of Appeals. We do not regard the matter as material, as it only refers to the claims of the stockholders to own the entire surplus in the defendant, and to the alleged attitude of the defendant as to these matters, in not denying their claims. This gives no ground for equitable interference at the suit of a policyholder against the defendant of the nature herein demanded.

As the questions in this case arise upon the defendant's demurrer to the bill of the complainant, it is necessary to direct attention to the effect of a demurrer as an admission. We are not called upon to cite authorities for the statement that a demurrer only admits facts well pleaded in the pleading demurred to. It does not admit the pleader's conclusions of law, nor does it admit the correctness of any opinion set forth in the bill, as, for instance, in regard to the probable effect in the future of the continued control of the defendant by the interests existing therein up to 1906. Hence any construction placed by complainant upon the charter of the defendant and the insurance policy issued by the defendant to the complainant is not admitted, nor is the allegation of the ownership of the surplus by the policyholders as alleged by the complainant, nor any opinion which is expressed in the bill as to the ability of the defendant to continue business, nor is any other opinion as to future happenings admitted by the demurrer.

Before discussing the merits of the case it is also proper to first decide what force is to be given the decisions of the highest court of New York with reference to the construction of the charter of the defendant and the policy of insurance issued by it. *Greeff* v. *Equitable Life &c.*, 160 N. Y. 19. Although the charter was obtained under a general law of the State of New York relating to the incorporation of insurance companies, yet the construction to be given that act and the charter obtained in pursuance of it pertains to the state courts just as if the charter were granted by a special act of the legislature. Ever since its incorporation under the general law of the State of New York, in 1859, the defendant has always done business

and had its general home office and its legal residence and domicil in that State. The insurance policy owned by complainant appears on its face to have been executed in New York and there is no averment to the contrary. The decisions of the highest court of New York are therefore binding upon this court as to the meaning and effect of the charter of the defendant, and as it is a New York company and the contract is a New York contract, executed and to be carried out therein, its meaning and construction as held by the highest court of the State will be of most persuasive influence, even if not of binding force, in the absence of any Federal question arising in the case. There is no such question here. *Stone* v. *Wisconsin*, 94 U. S. 181, 183; *Park Bank* v. *Remsen*, 158 U. S. 337, 342; *Sioux City &c. Co.* v. *Trust Co.*, 173 U. S. 99. This principle has been so frequently decided that further reference to adjudged cases need not be made.

The suit is brought by complainant for himself, as well as all other policyholders and annuitants of the defendant who may choose to come in and join in the suit, and the company is the sole defendant. No officer of the company or stockholder therein, or any alleged debtor to the company is made a party, and consequently any averment of the continuance in power of the same persons in the board of directors or otherwise is immaterial as a reason for the bringing of the action by the complainant in his own behalf, etc., to recover debts due the defendant, which the defendant will not itself sue for. This is not an action of that nature and there are not present the necessary parties to maintain it if it were. The purpose of the averment is probably to sustain the application for a receiver, made necessary, as alleged, by the wrongdoing of some of the former officers of the defendant. That, however, gives no jurisdiction for an accounting in equity as between a simple debtor and creditor and in the absence of any trust relation between them. A mere creditor as such has no right to that remedy.

We come then to a careful analysis of the other averments

in the bill, and it is seen that it is largely founded upon the
theory of the existence of a trust in favor of the policyholders,
past and present of the defendant, as against the defendant,
its officers and stockholders, and it is asked that they, and each
of them, be decreed to hold the funds and surplus, as they may
be ascertained, as trustees for such persons as shall be declared
to have interests in such fund and surplus, under the decree
of the court to be entered in the case. The complainant al-
leges that this so-called surplus of the defendant belongs en-
tirely to the policyholders, after making certain deductions,
and the defendant holds it, or, at any rate, a large portion of
it, in trust for them, and that such is the proper construction
of the charter and the policy, and he also avers that defendant
has not distributed it from time to time to the policyholders
as intended by the charter and the policy. The various alle-
gations in regard to waste, mismanagement and improper in-
vestment and reinvestment of the funds of the defendant, and
also the alleged fraudulent conduct of the officers guilty of
such acts, do not show any inequitable or improper actual
distribution of the fund as among the policyholders themselves.
Although the effect of such conduct has plainly been to pre-
vent the growth of the surplus to greater proportions than it
has reached, there is still no averment anywhere in the bill
that the amount of the surplus that was, in fact, distributed was
not fairly and equitably distributed to each of the policyholders,
according to the amount of his policy and in strict accordance
with the rules and regulations theretofore adopted by the de-
fendant for such distribution, which rules had been accepted
by the complainant from time to time as such distribution was
made. The fact, as alleged, that the amounts were paid to
the complainant and accepted by him on the fraudulent rep-
resentations of the officers that such amounts were all that
were due, has no effect upon the question of the equitable and
proper distribution of the fund that was, as a matter of fact,
actually distributed. Nor does it give a cause of action of an
equitable nature. These averments only show waste and mis-

appropriation of the moneys of the defendant before they ever reached the surplus fund and before any distribution of it was made. In other words, they aver facts of mismanagement of the funds and wrongdoing by others, upon which a cause of action might arise against the officers and stockholders, or other persons guilty of such acts of wrongdoing and waste, in favor of the company itself. They lay no foundation for the jurisdiction of a court of equity in such a case, unless it appears that the relation between the policyholder and the defendant is that the latter is the trustee of the former by reason of the trust relation between them resulting from the insurance policy. The complainant's contention, as above stated, that there is such a trust in the fund mentioned has never been regarded as the law in the State of New York (*Cohen* v. *New York Life Insurance Company*, 50 N. Y. 610; *People* v. *Security Life &c. Co.*, 78 N. Y. 114; *Bewley* v. *Equitable Life &c.*, 61 How. Pr. 344; *Uhlman* v. *New York Life Ins. Co.*, 109 N. Y. 421; and, to the same effect, *Greeff* v. *Equitable Life Assurance Society*, 160 N. Y. 19), nor anywhere else so far as any case has been cited on the subject.

In the *Uhlman case, supra*, the plaintiff was the owner of a policy known as a ten-year dividend system policy, otherwise a "tontine plan" policy, which, it was averred, gave to the holder a special title to the funds derived from the payment of premiums on the policies of that kind and in the particular class to which the policy belonged. The Court of Appeals of New York held that such claim was not well founded; "that it could not be said that the defendant is in any sense a trustee of any particular fund for the plaintiff, or that it acts as to him and in relation to any such fund in a fiduciary capacity. It has been held that the owner of a policy of insurance, even in a mutual company, was in no sense a partner of the corporation which issued the policy, and that the relation between the policyholder and the company was one of contract, measured by the terms of the policy." The holder of a policy of the nature of that referred to in the *Uhlman case* would be certainly as much entitled to claim that the company was a trustee for the holder as would be this

complainant. Indeed, the policyholder in the *Uhlman case* occupied a much stronger position for making the claim than does this complainant, who is the holder of an ordinary life policy, with rights to participate in the distribution of the surplus according to methods, etc., adopted by the defendant, as already mentioned. The claim was, however, denied by the state court, following the decisions of the New York courts for many years. To hold that a trust is proved in this case by virtue of the charter and policy of insurance is to hold contrary to the decisions of the highest court of the State of New York for a long number of years past without a single decision the other way in all that time.

We also think there is no ground for the contention on the part of the complainant that he, as a policyholder, had any right to an accounting, and to compel the distribution of the surplus fund in other manner or at any other time, or in any other amounts than that provided for in the contract of insurance. By that contract he was entitled to participate in the distribution of some part of the surplus, according to the principles and methods that might be adopted from time to time by the defendant for such distribution, which principles and methods were ratified and accepted by and for every person who should have or claim any interest under the policy. It has been held that under such a policy how much of the surplus shall be distributed to the policyholder and how much shall be held for the security of the defendant and its members is to be decided by the officers and management of the defendant in the exercise of their discretion to distribute, having in mind the present and future business, and, in the absence of any allegations of wrongdoing or mistake by them, their determination must be treated as proper, and their apportionment of the surplus is to be regarded *prima facie* as equitable. *Greeff* v. *Life Insurance Co.,* *supra.* The court further held that manifestly a discretion rests with the defendant in determining how much of the surplus should be distributed to the policyholders and how much should be retained for the security of the defendant and its members,

having in view the present and future contingencies of the business, and the court remarked that "there was no evidence or allegation that the plaintiff had been inequitably treated by the defendant as between himself and the other policyholders." The frauds and mismanagement mentioned did not in themselves give a policyholder any greater right to a distribution than is mentioned in the contract, and the right depended upon the judgment and discretion of the company as to time and amount.

Nor is there any possible reason for the appointment of a receiver and a real, though not formal, dissolution of the company and the distribution of all its assets, because the fund is not as large as it ought to have been, owing to the misconduct of the officers, and because the defendant has not distributed as much of the surplus as complainant thinks he is entitled to, because of such frauds and misconduct. It is contended, however, that the New York Court of Appeals has held that complainant is entitled to such relief as is demanded herein, and he cites as authority the *Uhlman case, supra,* and urges that provided it appear, by proper allegations (such as this bill contains) and proof, that frauds, misappropriation of the funds, etc., have been perpetrated by the officers or agents of the defendant, so as to prevent the proper accumulation of the surplus, the court will grant the relief demanded herein. We think that neither the *Uhlman* nor the *Greeff* case decides any such principle as is asserted by the complainant. After holding, as already stated, that there was no trust existing between a policyholder and even a purely mutual company, reference was made in the former case to the contention of the defendant that the apportionment made by it, or under its direction, was absolutely and, at all events, conclusive upon the policyholders, it was said in the opinion that that was not an accurate statement, and that the plaintiff and others similarly situated had the right, upon proper allegations, of showing that the apportionment made by the defendant was not equitable, or had been based upon erroneous principles, and he had the right to a trial and to make proof of

such allegations, and if true the court could declare the proper principles upon which the apportionment was to be made so as to become an equitable apportionment. The *Greeff case* simply adopted that statement in the course of the opinion, which is chiefly devoted to the discussion of other matters.

There is nothing in either case to show that any other wrongdoing or fraud was in contemplation of the court than that above mentioned, viz., that the proposed or actual distribution of the money as between the policyholders themselves was not equitable, or was based on erroneous principles.

Wrongdoing, waste, misapplication of funds and actions of that character, affecting the amount of the fund before distribution, were not held to furnish a ground of equitable jurisdiction for an accounting, and it was not held that even frauds in the distribution itself as between policyholders, or the adoption of wrong principles for such distribution, would be ground of jurisdiction in equity. That question was not before the court, and was not decided. It was simply stated that it would afford ground of action, not necessarily ground for equitable jurisdiction. However, this is no such case, as the language used shows was contemplated in the observations of the court in the *Uhlman case*.

So far as the averments in the bill go as to the purchase of the majority of the stock of the defendant by Mr. Ryan, and the execution by him of a deed of trust, we think those averments have no tendency to prove the existence of facts material to the cause of action attempted to be set forth in the bill.

There is no ground of jurisdiction in equity, either for the accounting prayed for or for the appointment of a receiver to wind up the affairs of the defendant on account of the alleged insolvency of the defendant. The complainant at first avers defendant's solvency, and that it is fully able to pay all demands from policyholders, and to perform every contract made by the defendant. The subsequent averment that the defendant is insolvent, because, as a conclusion of law asserted by the pleader, it is responsible to policyholders for excessive sums paid in the

way of salaries and fees, and also for sums of money lost consequent upon the fraud and waste of the directors or officers of the defendant, all of which are too large for the defendant to pay when demanded, is not admitted by the demurrer, and is not accurate as a conclusion of law. Whether such liability could be legally maintained or whether the defendant would be unable to pay the amount claimed from it when it was properly proved, and judgment duly recovered against it in an action for that purpose, is a mixture of a legal conclusion with a matter of opinion as to the future ability of the defendant to pay such liabilities. And the idea that the defendant itself is liable to policyholders for the frauds or wrongdoing set out in the bill and committed by its officers or members of its board of directors against the defendant and in their personal interests, we regard as without foundation. Such a kind of future possible insolvency furnishes not the slightest ground for present legal action adverse to the defendant. Very likely the defendant could itself maintain an action against those who have been guilty of fraudulent conduct towards it, resulting in financial loss to it, and, of course, those who are alleged to be guilty would have to be made parties. No case is therefore made for an accounting or for a receiver based upon these allegations of the bill. Certainly the court could not give any judgment that the policyholders are the owners of the so-called surplus. It may be that they are. The bill itself avers that the stockholders contend they are the owners of the surplus, or at least of some considerable part of it, and certainly no decree could be made on the subject of such ownership and against the claims of the stockholders, without their presence as parties.

If it be held that there is no trust, then it follows that the suit cannot be maintained in equity on the sole ground of fraud. Such a ground for the maintenance of the suit (even if complainant could otherwise maintain it) is a mere incident to the main ground set forth in the bill. Equity does not now take jurisdiction in cases of fraud where the relief properly obtainable on that ground can be obtained in a court of law, and

where, so far as necessary, discovery may be obtained as well as in equity. Rev. Stat., § 724; *United States* v. *Bitter Root Co.,* 200 U. S. 451, and cases cited.

Complainant also claims jurisdiction in equity on the ground that such an action will prevent a multiplicity of suits. But this is not a case for the application of the doctrine. There can be no claim that the complainant is saved from a multiplicity of suits by the maintenance of this. A single action at law by him against the company would give him all the relief to which he might be entitled. If there are others similarly situated as to claims, they can themselves commence an action. The defendant is not in court asking it to take jurisdiction of its suit against others in order to prevent a multiplicity of suits against it or by it. It does not rest with complainant to urge as a foundation for his suit that the defendant may thereby be saved a multiplicity of suits by other parties when the defendant raises no objection to such possible suits and urges no such ground for jurisdiction in equity of the complainant's suit.

After a careful consideration of all the facts we are of opinion that no cause of action is alleged in the bill for an accounting or for the appointment of a receiver or for other equitable relief. The decree of the Circuit Court of Appeals is therefore

*Reversed.*

MR. JUSTICE DAY, not having heard the case, took no part in its decision.