[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Pursuant to Rhode Island Rule of Civil Procedure 12(b)6, Defendants — The Beacon Mutual Insurance Company (Beacon), Joseph A. Solomon, Jeffrey C. Johnson, and Michael D. Lynch (collectively Defendants) — move this Court to dismiss the Third Amended Complaint filed by Plaintiff Heritage Healthcare Services, Inc. (Heritage).
 Facts and Travel
The Rhode Island Workers' Compensation Fund, renamed The Beacon Mutual Insurance Company, was established in December 1990 as "a workers' compensation carrier of last resort." G.L. 1956 § 27-7.2-2. The General Assembly deemed it necessary to establish a competitive market for workers' compensation insurance in order to foster the economic development of the State by making this insurance available to all employers. Id.
Beacon is organized as a domestic mutual insurance company and, with certain exceptions, is subject to the laws governing corporations. Id. Under Rhode Island General Laws, Beacon has specifically been granted the power to "declare dividends to its policyholders when there is an excess of assets over liabilities, and [certain] minimum surplus requirements" have been met. § 27-7.2-9. However, upon liquidation of the company, "policyholders, in their capacity as owners of the fund, shall have no distributive claims." § 27-7.20-2.
In 1997, at the request of Beacon, the Rhode Island Department of Business Regulation (DBR) approved a shared earnings dividend plan, entitled "Shared Earning Endorsements." This plan enables Beacon to declare dividends to its policyholders without falling under § 27-7.2-9. According to Plaintiff, this plan calculates the dividends to which each policyholder is entitled based on a formula which factors in the loss ratio for each individual policyholder. (Defendants' Memo at 4). Heritage, as a Beacon policyholder from December 1993 — December 1995 and from September 1999 — September 2002, received one of these "Shared Earning Endorsements" policies. (Complaint at ¶ 3). Plaintiff's Shared Earning Endorsements policy states:
 "You shall participate in the earnings of our company, but only to the extent and upon such conditions as shall be determined at the sole discretion of the Board of Directors of our Company in accordance with law and as made applicable to this policy, provided that you shall have complied with all of the terms of this policy with respect to the payment of premium and all other requirements thereto."
To date, the Board of Directors has yet to distribute any of Beacon's earnings. As a result, Plaintiff filed the instant Complaint alleging breach of contract and breach of fiduciary duty based on Beacon's failure to distribute accumulated surplus.
 Standard of Review
In determining whether to grant a Rule 12(b)(6) motion to dismiss, this Court "assumes the allegations contained in the complaint to be true and views the facts in the light most favorable to the plaintiffs." Giuliano v. Pastina, Jr.,793 A.2d 1035, 1036-37 (R.I. 2002) (quoting Martin v. Howard,784 A.2d 291, 297-98 (R.I. 2001)). This Court should not grant the motion "unless it appears to a certainty that [the plaintiffs] will not be entitled to relief under any set of facts which might be proved in support of [their] claim." Id. at 1037 (quotingBragg v. Warwick Shoppers World, Inc., 227 A.2d 582, 584 (R.I. 1967)). "The standard for granting a motion to dismiss is a difficult one for the movant to meet." Diciantis v. Wall,795 A.2d 1121 (R.I. 2002).
 Standing and Jurisdiction under § 27-9-51
In its Third Amended Complaint, Plaintiff seeks damages for breach of fiduciary duty predicated in part upon Defendants' alleged violation of the statutory requirement to distribute excess profits under § 27-9-51. However, the statute, under which Plaintiff seeks a remedy, does not afford individuals a private right of action. Therefore, Plaintiff is without standing to sue for alleged violations of the statute.
Statutory rights give rise to a private right of action in limited circumstances. The legislature must both intend to create a private right of action and evince that intent through the express language of the statute. Stebbins v. Wells,818 A.2d 711, 716 (R.I. 2003). The Stebbins Court explained this proposition thusly:
 "`the function of prescribing remedies for [statutory] rights is a legislative responsibility [and] not a judicial task.' Cummings v. Shorey, 761 A.2d 680, 685 (R.I. 2000). In Cummings, we held that the General Assembly's failure to include a civil-action enforcement provision within a statute indicated `no private cause of action for damages [under the statute] was intended. . . .' When a statute `does not plainly provide for a private cause of action [for damages], such a right cannot be inferred.' Bandoni v. State, 715 A.2d 580, 584 (R.I. 1998) (quoting In re John, 605 A.2d 486, 488 (R.I. 1992))." Stebbins, 818 A.2d at 716.
Recognizing that the plain language of § 27-9-51 expressly provides for a refund of any excess profits to policyholders per the order of the DBR[1] and fails to include language permitting policyholders to seeks money damages for its violation, this Court declines to infer a private right of action under this statute. Rather it is quite clear that the legislature contemplated action by the DBR only. For these reasons, § 27-9-51
does not afford Plaintiff a private right of action. Therefore, relief is unavailable.
This Court believes that Plaintiff lacks standing to challenge alleged violations of § 27-9-51 because this statute does not provide Plaintiff with a private right of action. Defendants' motion to dismiss these claims, to the extent that they involve §27-9-51, is granted.
Plaintiff further contends if its claim is not predicated on the violation of G.L. 1956 § 27-9-51, then Defendants' alleged violation of that statute in any event demonstrates a breach of fiduciary duty. In essence, Plaintiff is attempting to employ reasoning similar to that of negligence per se, where a violation of a statute unilaterally establishes negligence. If this Court were to accept that argument, the Administrative Procedures Act would be utterly undermined in that potential plaintiffs could circumvent the administrative adjudicative system simply by claiming a breach of fiduciary duty for a violation of law subject to the APA.
Heritage's claims, inasmuch as they involve § 27-9-51, are not yet redressable in this Court. Not until all available administrative remedies have been exhausted, is the judicial forum appropriate for review of these claims pursuant to the provision of the Administrative Procedures Act. Heritage must initially present their grievances involving § 27-9-51 to the appropriate division of the Department of Business Regulation. Therefore, this Court will limit its review to the claims which are independent from § 27-9-51.
 Breach of Contract
In order to determine whether a contract has been breached, the contract itself must be examined. Specifically, the Court must give effect to the plain meaning of the contractual terms and determine if the terms, as ordinarily understood, were breached.R.I. Depositors Econ. Prot. Corp. v. Coffey Martinelli, Ltd.,821 A.2d 222, 226 (R.I. 2003). See also Perry v. Garey,799 A.2d 1018, 1023 (R.I. 2002). In order to accomplish this, the document itself must be interpreted by the Court. However, the Shared Earnings Endorsement is not in evidence at this juncture of the litigation, as it was not attached to any of the pleadings.
When ruling on a Rule 12(b)6 motion, the Court may consider any documents attached to the pleadings. Bowen Court Assoc. v. Ernst Young, 818 A.2d 721, 725-726 (R.I. 2003). Pleadings consist of the complaint, the answer, the counterclaim and/or any amendments thereto. In the instant case, neither Plaintiff nor Defendants attached the Shared Earnings Endorsement to any of these documents.
The Complaint, however, did reference this document, as does the memorandum in support of the motion to dismiss. In fact, the memorandum in support of this motion relies on and quotes the following language of the document:
 "[y]ou shall participate in the earnings of our company, but only to the extent and upon such conditions as shall be determined at the sole discretion of the Board of Directors of our Company in accordance with law and as made applicable to this policy, provided that you shall have complied with all of the terms of this policy with respect to the payment of premium and all other requirements thereto." (Defendants' Memo at 4.)
Nevertheless, "[t]he mere fact that a pleading mentions or refers to a document — without attaching it to the pleading — does not cause that document to be incorporated by reference as if the pleader had appended it to the pleading." Id. at 726. Therefore, it is beyond the scope of this Rule 12(b)6 motion to refer to the Shared Earning Endorsement Document.
Although this Court is precluded from resolving this claim under the motion to dismiss standard, it may reach a determination through summary judgment. Rule 12(b)6 states,
 "[i]f on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Super. R. Civ. P. 12(b)6.
The Court will hear the parties on March 15, 2004 pursuant to the above quoted portion of Rule 12(b)6. The parties may file supplementary materials in that connection on or before March 8, 2004.
 Breach of Fiduciary Duty
Defendants assert two distinct arguments in defense of the breach of fiduciary duty claims. Defendants' first argument is premised on the proposition that mutual insurance companies generally owe no fiduciary duty to their policyholders. Thus, Defendants argue that the breach of fiduciary claims against the insurance company and its directors must be dismissed as a matter of law. Conversely, Plaintiff contends that Beacon, a mutual insurance company, owes the same fiduciary duty to its policyholders as a corporation owes to its shareholders. Whether a mutual insurance company owes its policyholders a fiduciary duty appears to be a question of first impression in Rhode Island
Defendants cite Equitable Life Assurance Soc'y of the U.S. v.Brown, 213 U.S. 25, 29 S.Ct. 404 (1909), in support of their claim that a fiduciary duty does not exist between a mutual insurance company and its policyholders. That court held that policyholders were not entitled to compel an accounting because,
 "it could not be said that the defendant is in any sense a trustee of any particular fund for the plaintiff, or that it acts as to him and in relation to any such fund in a fiduciary capacity . . . and that the relation between the policyholder and the company was one of contract, measured by the terms of the policy." Id. at 46.
Defendants attempt to bolster their argument by citing case law from a number of other jurisdictions in which courts reached the same conclusion. However, excluding the above-mentioned case, nearly all of these cases involved insurance companies' actions in addressing the insurance claims of policyholders in their capacity as insureds. For example, in Bernhard v. Farmers Ins.Exch., 915 P.2d 1285, 1289-90 (Colo. 1996), the court held that the insurance company owes a fiduciary duty only when "the insurer exercises a strong degree of control over the insured's interests." The court found that the insurance company did not exercise enough "control over the defense of a third party lawsuit" and therefore the insurance company owed no duty when it failed to settle the insured's claim. Id. at 1289. Also, Henryv. Associated Indem. Corp., 266 Cal.3d 1405, 1417 (Cal. Ct. App. 1990) stands for the proposition that "an insurer has no duty totally to disregard its own interest when they conflict with the insured's interests." (holding that the insured failed to sufficiently pled facts suggesting a fiduciary relationship where insurer refused to pay the insured's claim).
Nonetheless, a mutual insurance company is generally defined as the following:
 "A mutual insurance company, as its name implies, exists where several persons have joined together for their united protection, each member contributing to a fund for the payment of the losses and expenses. Under such an organization, each member is in a sense both an insured and an insurer. . . . The policyholders in a mutual are equivalent to stockholders in a stock corporation in so far as rights and remedies are concerned. Like stockholders, policyholders participate in the operation of the mutual through voting rights, and share in the company's financial success or failure." 3 Lee R. Russ, Couch on Insurance 3d § 39:15 at 39-18-39-19 (1995). (emphasis added).
Furthermore, many states attach a fiduciary duty to a mutual insurance company in situations similar to the present one. The Superior Court of Massachusetts responded to claims that mutual insurance companies owe no fiduciary duty to their policy holders by stating:
 "[i]t may indeed be true that the relationship between a stock insurance company and its insured is purely contractual. It may also be true that, with respect to matters concerning the contractual rights of insureds in a mutual insurance company, the mutual insurance company has no fiduciary duty to its insured. However, this Court does not accept that, with respect to disclosures made to policyholders in a mutual insurance company asking them to surrender their equity rights, the mutual insurance company has no fiduciary duty to its policyholders. Silverman v. Liberty Mut. Ins. Co., 2001 WL 810157, *6 (Ma. Super. 2001).
In addition, in a case in which policyholders brought a derivative claim against a mutual insurance company alleging breach of fiduciary duty during the demutualization of that company, the Supreme Court of Iowa found that the directors, officers and the company itself owe a fiduciary duty to its policyholders, if facts suggesting such a relationship are sufficiently pled. Reiff v. Evans, 630 N.W.2d 278, 291 (Iowa 2001).
The case law suggests that whether a mutual insurance company owes a fiduciary duty to its policyholders hinges on the claim involved. Specifically, the insurance company does not owe a fiduciary duty requiring it to act with the utmost good faith where the insured is disputing the treatment of the insured's claim to the company. However, when dealing with claims involving policyholders who are acting in their capacity as owners, courts generally treat policyholders as being entitled to the same fiduciary duty as owed to stockholders.
In the instant case, the fiduciary duty claims asserted by Plaintiff involve the decision by corporate executives to retain excess profits, rather than an individual claim under an insurance policy. Therefore, in this case, the claims as alleged implicate the policyholders' rights as owners rather than as insureds. As a result, Defendants owe a fiduciary duty to its policyholders under the facts as pled.
Defendants seek dismissal of the breach of fiduciary duty claims based on the protection afforded to its officers and directors under the business judgment rule, a presumption barring recovery unless rebutted. In support thereof, Defendants rely on a number of cases involving motions to compel mutual insurance companies to distribute dividends. Each of these cases was dismissed for failure to plead bad faith, thereby failing to state a claim upon which relief could be granted.
Defendants predominantly relied on a case decided by the Michigan Appellate Court, which dismissed the motion to compel the distribution of dividends pursuant to their Rule MCR 2.116(C)(8), which like our Rule 12(b)6 directs courts to dismiss claims which, based on the pleadings alone, fail to state a claim upon which relief can be granted. Churella v. Pioneer State Mut.Ins. Co., 258 Mich. App. 260, 272 (Mich. Ct. App. 2003). InChurella, the court denied the motion to compel dividends stating the following:
 "[t]herefore, because plaintiffs did not explain how the directors' failure to consider a distribution constituted fraud or bad faith dealings, and because plaintiffs have not cited any cases indicating that a failure to declare a dividend, without more, constitutes an abuse of business discretion, we conclude that plaintiffs have not sufficiently pleaded facts that would overcome the business judgment rule. . . . In sum, we hold that policyholders have no right to compel distribution where there is no statute, company bylaw, or contract provision according them that right, and where they did not sufficiently plead facts to overcome the business judgment rule." Id.
Rhode Island courts have adopted the Business Judgment Rule, though it has been afforded little treatment. See Meyer v.Jewish Home for the Aged of R.I., NO. 93-5374, 1994 R.I. Super. LEXIS 42, at *42-*43 (following Oberly v. Kirby, 592 A.2d 445, 462 (Del. 1991). When considering corporate law issues which have not been fully developed in this jurisdiction, our courts reach to Delaware for guidance and support thereon. See also Bove v.Comm. Hotel Corp., 105 R.I. 36, 42, 249 A.2d 89, 93 (R.I. 1969) (stating in the area of corporate law, Delaware case law is a valuable tool for Rhode Island courts to utilize).
The Delaware Supreme Court presents the following analysis of the business judgment rule,
 "[t]he business judgment rule is a presumption that `in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company [and its shareholders].' The business judgment rule operates as a procedural guide for litigants and as a substantive rule of law. `As a procedural guide, the business judgment presumption is a rule of evidence that places the initial burden of proof on the plaintiff.' To rebut the presumptive applicability of the business judgment rule, a shareholder plaintiff has the burden of proving that the board of directors, in reaching its challenged decision, violated any one of its triad of fiduciary duties: due care, loyalty, or good faith. If a shareholder plaintiff fails to meet this evidentiary burden, the business judgment rule operates to provide substantive protection for the directors and for the decisions that they have made. If the presumption of the business judgment rule is rebutted, however, the burden shifts to the director defendants to prove to the trier of fact that the challenged transaction was `entirely fair' to the shareholder plaintiff." Emerald Partners v. Berlin, 787 A.2d 85, 90-91 (Del. 2001) (citations omitted).
In essence, the business judgment rule creates a rebuttable presumption that directors have acted properly. In re AbbottLabs. Derivative Shareholders Litig., 325 F.3d 795, 807 (7th Cir. 2001) (citing, Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).
Defendants contend that, "[p]laintiffs have the burden of establishing facts to rebut this presumption." In re AbbottLabs., 325 F.3d at 807 (following Aronson, 473 A.2d at 812). Under this theory, it is conceded that Plaintiff is not under the obligation to try his case in the complaint. Rather, "[t]he totality of the complaint's allegations need only support a reasonable doubt of business judgment protection, not a `judicial finding that the directors' actions are not protected by the business judgment rule." Id. at 809. (citing, Grobow v.Perot, 539 A.2d 180, 186 (Del. 1988). However, Plaintiff contends that under the liberal pleading rules employed by Rhode Island courts, Plaintiff is under no obligation to plead with particularity. Rather, Plaintiff contends that it must merely provide notice of the claim to Defendants.
This Court is apprised of the pleadings' requirements and recognizes that motions to dismiss are granted with great reserve. However, where "the allegations . . . show that on the face of the complaint there is some insuperable bar to relief," this Court must grant the Rule 12(b)6 motion. Id. (citing,Goldstein v. Rhode Island Hosp. Trust Nat'l Bank, 110 R.I. 580,296 A.2d 112 (1972).
In a case, strikingly similar to the instant case, the California Court of Appeals indicated that the business judgment rule creates a rebuttable presumption of proper conduct by corporate directors and officers which must be rebutted at the pleading stage. See State Farm Mut. Auto. Ins. Co. v. SuperiorCt. of Los Angeles County, 2003 Cal.App. Lexis 1863 (ordering the trial court to vacate the denial of a motion to dismiss in accordance with business judgment rule canon). In that case, the policyholders of a mutual insurance company alleged that the company breached its duty by failing to distribute retained surplus. In reaching its decision, the court acknowledged financial concerns specific to mutual insurance companies. Namely,
 "[m]utual insurers have greater difficulty than stock insurers in raising capital to fund growth, and hence, must rely to greater extent on accumulated surplus. . . . Surplus provides a safety cushion to absorb adverse results and protects the policyholder and the company by helping maintain the company's solvency during periods of unfavorable operating results, . . . especially in light of potential catastrophes that may result in substantial damage to numerous policyholders." Id. at 8-10.
The State Farm Court found that the business judgment rule protects directors and officers from liability for its business decisions because these persons are equipped with knowledge of and experience in their particular industry. Specifically, the court stated:
 "The business judgment rule is a presumption that directors of a corporation make business decisions on an informed basis, in good faith, and with the honest belief that the course taken was in the best interests of the corporation. Like most rebuttable presumptions, it arises by operation of law. However, the plaintiff may rebut the presumption by presenting evidence that the director[s] acted fraudulently, illegally, or without becoming sufficiently informed to make an independent business decision. The burden is on the party challenging the decision to present facts rebutting the presumption." Id. at 32-33.
In the instant case, Plaintiff, without a great deal of elaboration, alleges that Defendants failed to declare dividends. The Complaint simply states that "Defendant, through its Board of Directors and officers, breached their fiduciary duty to the Plaintiff by failing to allow the Plaintiff to share in the earnings of the company . . . [and] by failing to advise the Plaintiff of excess profits earned." (Complaint ¶ 16-17.) Without more, this Complaint would fail to rebut the presumption created under the business judgment rule, because "[t]he fact that a corporation has earned profits out of which directors might lawfully declare a dividend . . . is insufficient alone to justify judicial intervention." Id. at 33. However, in an attempt to overcome the presumption, the Complaint was amended to allege that "Defendants failed to deal with Plaintiff in good faith and their action resulted in bad faith toward its insured." (Complaint ¶ 28). Yet "conclusory allegations of bad faith and misfeasance" are insufficient to overcome the presumption, rather Plaintiff is required to plead specific facts which demonstrate improper conduct by Defendants. Stoico Restaurant Group, Inc. v.Jeffrey, 2001 U.S. Dist. LEXIS 353, 9. It is clear that Plaintiff has failed, under the facts as pled, to rebut this presumption.
Plaintiff has failed to plead with sufficient particularity to overcome the presumption created under the business judgment rule. Accordingly, Counts II and III are dismissed for failure to state a claim upon which relief can be granted.
[1] Specifically, it provides that, "[i]f the insurance group has realized an excess profit, the department shall order a return of the excess amounts after affording the insurancegroup an opportunity for a hearing and complying with theprovisions of the Administrative Procedures Act, chapter 35 of title 42." § 27-9-51(f) (emphasis added).