The **MERCHANTS NATIONAL BANK**, Executor, Defendant, Appellant,

v.

Bernice I. **MORRISS**, Plaintiff, Appellee.

No. 5452.

United States Court of Appeals First Circuit.

July 31, 1959.

Woodbury, Chief Judge, dissented.

**364**

James E. Mitchell, Bangor, Me., with whom John W. Ballou and Mitchell & Ballou, Bangor, Me., were on brief, for appellant.

Bartolo M. Siciliano, Dexter, Me., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Circuit Judge (Retired).

This case was begun by a complaint filed in the United States District Court for the District of Maine, founding jurisdiction upon diverse citizenship and alleging in substance that Dr. Albert W. Fellows negligently wounded plaintiff's hand with a needle, thus introducing foreign matter, and that plaintiff suffered substantial damage from a resulting infection. Since Dr. Fellows had meanwhile died, the action was brought against the bank as the executor of his estate.

Also because of Dr. Fellows' demise, plaintiff was held incompetent to testify concerning events during Dr. Fellows' life, under the "dead man" statute, Me. R.S. c. 113, § 119. At trial before a jury, the plaintiff introduced the sworn testimony of her daughter-in-law, Joan, her son, Glen, and a Dr. Adams, who was stipulated to be a medical expert. By agreement of the parties, the plaintiff without being sworn demonstrated the present movability of her injured hand and answered questions of Dr. Adams as to pain caused by certain motions. At the close of plaintiff's case defendant rested and moved for a directed verdict, which was denied. The jury returned a verdict for plaintiff in the amount of $4,990; defendant's motions for judgment notwithstanding the verdict or a new trial were denied, judgment was entered on the verdict, and defendant appealed.

On the evidence presented, the jury might reasonably have found the following facts: In October, 1948, plaintiff was visiting Joan and Glen and their two daughters, aged fifteen months and thirty months, who then lived in Maine. The older child had been sick, and Joan made an appointment with Dr. Fellows for a physical examination of both children. Dr. Fellows had an excellent reputation as a physician and a specialist in pediatrics.

During the physical examinations Dr. Fellows asked whether the children had been vaccinated, and Joan agreed that he should then vaccinate them against smallpox. The only other person in Dr. Fellows' office was a receptionist in another room; there was no nurse. Dr. Fellows

requested that plaintiff, who was holding the younger child, place her on a stool and hold her there.

The plaintiff assumed a position at the right of the child and facing in the same direction, and placed her right hand on the child's right hip, her left arm around the child's waist and her left hand at the child's left hip. The palm of each hand was against the child, the thumb grasping the child's back and the fingers extended forward.

Dr. Fellows then administered a vaccination high on the child's left arm.[1] He then dropped his hand abruptly, said "She is through", whirled, and went into another room.[2] Joan described the doctor's movements as very quick and his manner as brusque. Plaintiff, after the doctor left, held out her left hand and said: "Look, he stuck me." (Defendant objected to Joan's relation of this statement.) Joan observed a puncture at the base of the index finger and blood thereabout, and gave plaintiff a cleansing tissue to place over it.

Plaintiff removed the younger child to the waiting room and left her with Joan's mother. Joan placed the older child on the stool and held her; the doctor returned with materials for the second vaccination; plaintiff returned and watched; and vaccination of the older child was completed. The Morrisses paid a fee to the receptionist and left without mentioning plaintiff's wound to Dr. Fellows. The whole party went to the car, where Glen was waiting, plaintiff showed the wound to Glen, and they all entered the car and drove home.

A few days later a redness and swelling of plaintiff's hand at the base of the index finger became apparent, which became severe and spread somewhat. After nine days she consulted Dr. Adams,[3] who found an acute infection which he later diagnosed as severe reaction to a vaccination against smallpox. Dr. Adams continued to treat the plaintiff for almost a month, during which time she was hospitalized for a short period.

Plaintiff had at the time of trial some residual limitation in movement of her left hand and pain when these limitations were exceeded, which symptoms were not present before the infection in question. She sustained $145 in medical expenses, and was unable to work as a practical nurse but was employed as a housekeeper.

Defendant raises three points on the merits of the case on this appeal: (1) That the evidence was insufficient to authorize the jury to find for plaintiff; (2) that hearsay evidence was erroneously admitted; and (3) that the statute of limitations barred the filing of the complaint. We think that the third point is well taken and that the complaint should be dismissed. Hence we shall make no comment upon the first two alleged errors, and on another issue raised as to the limitations on witnesses' mileage taxable as costs.

■ Defendant's contention that the present action was barred by the statute of limitations is based on Me.R.S. c. 112, § 93, which provides that:

"Actions for assault and battery, and for false imprisonment, slander, libel and malpractice of physicians and all others engaged in the healing art shall be commenced within 2 years after the cause of action accrues." [4]

---

1. Joan described a hypodermic needle and syringe as having been used, whereas Dr. Adams had never heard of such a technique.

2. Dr. Adams' record, Plaintiff's Exhibit 1, showed the plaintiff had told him when she visited him that the child had moved and she, in trying to control the child, had put her arm around it and thus struck the needle which Dr. Fellows was holding.

3. Glen testified that Dr. Fellows had arranged this consultation and that Dr. Adams had told him so, but Dr. Adams denied any communication with Dr. Fellows.

4. "Malpractice" and the subsequent words were added by an amendment of March 20, 1931 (Me.Acts & Resolves 1931, c. 62), without any preamble or other indication of its purpose or meaning.

An action is commenced by the making of a writ intending that it be served forthwith. Me.R.S. c. 112, § 103; see Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520. This action was begun October 12, 1954, just four days less than six years after the tort alleged. But plaintiff argues, and the district court held, that § 93 is inapplicable because plaintiff was not a patient of Dr. Fellows, so that the general provision of Me.R.S. c. 112, § 90 (VII), allowing six years for the institution of "all other actions on the case", governs.

Neither counsel nor the court have been able to discover any pertinent construction of the statute or definition of "malpractice" by the state court, or even any authority directly in point from other jurisdictions. We are therefore completely unaided in our task of seeking the legislature's meaning.

In the first place, it is obvious that "negligence to a patient" is an unacceptable definition. A doctor driving his car down the street might negligently run over a patient without being entitled to the two-year limitation period. And an Ohio case has held that that state's counterpart of § 93 rather than its equivalent of § 90 (VII) governs an action by a husband to recover for medical and housekeeping expenses and loss of consortium from a doctor who operated on the plaintiff's wife. The court summarily rejected the suggestion that the malpractice statute was inapplicable to the alleged negligent injury to the non-patient husband. Cramer v. Price, 1948, 84 Ohio App. 255, 82 N.E.2d 874. Undoubtedly the term "malpractice" is most frequently employed in doctor-patient litigation. Yet it is often defined without reference to such a relationship. "Malpractice is a failure of the physician to exercise the required degree of care, skill, and diligence". Lake v. Baccus, 1939, 59 Ga.App. 656, 2 S.E.2d 121, 122; see Hodgson v. Bigelow, 1939, 335 Pa. 497, 7 A.2d 338, 340.

Plaintiff argues that the doctor-patient relationship is the only clear dividing line that can be used, and there is some validity in this contention. But it is not necessary that legal categories be described by metes and bounds, nor should an unintended distinction be judicially introduced into a statute merely for the sake of simplicity. Suppose that Dr. Fellows had negligently struck the plaintiff's hand before puncturing the child's skin, and had thus transplanted some foreign matter from the plaintiff's skin which infected the child. Or see Harriott v. Plimpton, 1896, 166 Mass. 585, 44 N.E. 992, where the defendant was negligent in performing a physical examination of the plaintiff for which he had been employed by a third party. Or see Cramer v. Price, supra. Certainly the exact purpose of the short statute of limitations on malpractice actions is not clear; it might be simply to protect persons "engaged in the healing art", or it might be to compensate for the peculiar difficulties of defending against such an action. But in any event the plaintiff has suggested no reason, nor can we think of any, why the legislature would allow a full six years for Mrs. Morriss to sue Dr. Fellows, or the third party to sue Dr. Plimpton, or the husband to sue Dr. Price, while limiting the child or Mr. Harriott or the wife to two years.

It seems to us that the true distinction of "malpractice" actions, as the word was used in § 93, must be the especial standard of care and skill which the law imposes on a person purporting to practice the art of healing. See Ritter v. Sivils, 1956, 206 Or. 410, 293 P.2d 211. It is clear that no contract is required to impose this standard. See Edwards v. Lamb, 1899, 69 N.H. 599, 45 A. 480, 50 L.R.A. 160; Jones v. Stanko, 1928, 118 Ohio St. 147, 160 N.E. 456. It is because of this standard that in Maine expert evidence is ordinarily required to prove malpractice, except where the matter is within the competence of an ordinary jury. Cyr v. Giesen, 1954, 150 Me. 248, 108 A.2d 316. We must conclude that by "malpractice" the Maine legislature meant professional conduct of a person while purporting to engage in the

healing art which was negligent because it failed to satisfy the standard of professional skill of such persons in the relevant locality. It follows that § 93 barred the institution of the present action.

■ The plaintiff's theories, as the trial judge explained them to the jury in his charge, were that Dr. Fellows' conduct was tortious "because he permitted the plaintiff to hold her grandchild while he was vaccinating the grandchild and did not have a nurse or skilled technician available for this purpose", or "because after he completed vaccinating the grandchild, he turned abruptly away, dropped his hand and struck the plaintiff." Of course, plaintiff complains of the wound by the needle only because of the vaccine on it, and obviously both of these theories are based on allegations of professional misconduct limited to the context of medical practice. And the jury was charged that Dr. Fellows' conduct was to be measured by "what such a doctor as I have described, an ordinary, prudent doctor of Dr. Fellows' training and experience, would have done or would not have done under the circumstances". The legislature must have meant to include such a complaint in § 93.

A judgment will be entered vacating the judgment of the District Court, setting aside the verdict, and remanding the case for entry of an order dismissing the action.

WOODBURY, Chief Judge (dissenting).

I can point to no supporting authority, but it seems to me that there cannot be an action for malpractice unless it appears that the defendant, as a medical man or at least as one who holds himself out to be such, undertook to "practice" the healing art upon the plaintiff, either with the plaintiff's consent, or if the plaintiff was unconscious at the time, without his consent. In short, I think a *sine qua non* of the action is an attempt to "practice" the healing art upon the plaintiff. Therefore, since Dr. Fellows was not attempting to use his art on the plaintiff but on her grandchild, I would say that the Maine statute limiting the time for bringing actions for malpractice to two years does not apply. I would, however, remand for a new trial for error in the admission of evidence.