**BOWEN COURT ASSOCIATES et al.**

v.

**ERNST & YOUNG, LLP et al.**

No. 2001–294–Appeal.

Supreme Court of Rhode Island.

March 27, 2003.

Thomas Romano, William Landry, Providence, for Plaintiffs.

John E. Bulman, Providence, for Defendants.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

**OPINION**

FLANDERS, Justice.

Must non-client and third-party claimants file professional-negligence lawsuits against accountants within one of the periods provided for in the statute of limitations for accounting malpractice, G.L.1956

§ 9–1–14.1?[1] We answer this question in the affirmative. We do not decide, however, exactly which non-clients and third parties can file such claims, nor under precisely what circumstances they can do so. Rather, we hold that third-party claims for alleged professional negligence or other negligent wrongdoing, which are based on or related to professional services that the accountants in question allegedly performed or failed to perform, constitute actions for accounting malpractice; that, therefore, such claims must be brought within one of the statutory time limits specified in § 9–1–14.1 for filing accounting-malpractice claims; and that the absence of contractual privity between the claimants and the accountants in question does not remove such professional-negligence claims from the ambit of the accounting-malpractice statute of limitations.

We also hold that G.L.1956 § 42–116–40 precludes any attempt to obtain equitable indemnification from a party who has resolved its liability to the Rhode Island Depositors Economic Development Corporation (DEPCO) in "a judicially-approved good faith settlement" with respect to any "matters addressed in the settlement." *Id.*

For the reasons accounted for herein, we affirm the judgment of the Superior Court dismissing the claims in this case and deny the present appeal.

### Facts and Travel

We have described the factual background of this lawsuit in *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1006–07 (R.I.2001) (*Bowen Court I* ). Suf-

fice it to say that in *Bowen Court I* we held that DEPCO was entitled to a judgment against the borrower and guarantors who are the named plaintiffs in this case—that is, Bowen Court Associates (Bowen Court), a Rhode Island general partnership, and its loan guarantors, respectively—for the amounts due and owing to DEPCO on an unpaid real-estate loan, irrespective of any recoupment defense. *Id.* at 1010.

To briefly recap: in 1990, Bowen Court was a Rhode Island general partnership and plaintiffs James S. Gladney, Roderick A. Mitchell, and Downtown Investors, Inc., were its general partners. Together with plaintiffs Philip W. Noel, Charles J. McGovern, and Gary R. Pannone, general partners Gladney and Mitchell personally guaranteed the repayment of certain loan financing provided to Bowen Court by the Rhode Island Central Credit Union (credit union). In their complaint in this case, plaintiffs alleged that they chose the credit union as the lender for their proposed East Providence residential real-estate project (project) based on the audits, financial reports, and other work product that defendants, the accounting firm of Ernst & Young LLP and its individual partners (accountants or defendants), provided for many years to the credit union while serving as its accountants. They further alleged that the accountants negligently prepared the credit union's financial statements and, in so doing, negligently misrepresented its financial strength to plaintiffs, some of whom were also members of the credit union. After a temporary receiver took control of the credit union on March 27, 1991, plaintiffs discov-

---

**1.** General Laws 1956 § 9–1–14.1 provides, in pertinent part:
"[A]n action for * * * accounting * * * malpractice shall be commenced within three (3) years from the time of the occur-

rence of the incident which gave rise to the action * * * (2) * * * [or] within three (3) years of the time that the act or acts of the malpractice should, in the exercise of reasonable diligence, have been discovered."

ered that they had misplaced their reliance on the accountants' work product when they selected the credit union as the project's lender. Indeed, when the credit union's receivership became permanent on May 3, 1991, plaintiffs lost the balance of their $2.1 million loan commitment for the project, having received only $525,000 of the loan proceeds. Eventually, after they defaulted on repaying that portion of the loan that they received, plaintiffs also lost the project's real estate at a foreclosure sale held on June 15, 1992.

Thereafter, DEPCO, as assignee and successor-in-interest of the credit union, sued plaintiffs for the unpaid loan balance, plus interest. Ultimately, DEPCO prevailed. *See Bowen Court I*, 763 A.2d at 1010. After unsuccessfully defending against DEPCO's lawsuit, Bowen Court and its guarantors then filed this lawsuit against the accountants, accusing them of negligently performing accounting services for the credit union and negligently misrepresenting its true financial situation. According to plaintiffs, the accountants' negligence caused them to default on their loan-repayment obligations. But it is undisputed that plaintiffs failed to file their claims against the accountants within § 9-1-14.1's time limits for filing professional-malpractice actions.

Moreover, in 1997, DEPCO settled its own claims against the accountants for their alleged professional negligence vis-à-vis their accounting work for the credit union and others. As a result of that settlement, the accountants asserted that § 42-116-40 provided them with statutory immunity and barred plaintiffs' attempt to obtain equitable indemnification from them for their alleged negligence in connection with their accounting work for the credit union.

In due course, the accountants moved to dismiss plaintiffs' complaint under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, arguing, *inter alia,* that § 9-1-14.1, the accounting-malpractice statute of limitations, barred plaintiffs claims; that plaintiffs had alleged no facts giving rise to the breach of any duty owed to them by the accountants; and that § 42-116-40 precluded plaintiffs' indemnity claims. The plaintiffs responded by contending that their negligence claims were not subject to § 9-1-14.1 because they lacked any contractual relationship with the accountants and that § 42-116-40 did not immunize the accountants from their indemnity claims. After a hearing, the Superior Court granted the accountants' motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) and, alternatively, granted the motion under Rule 56 of the Superior Court Rules of Civil Procedure. Nevertheless, the court only entered an order dismissing the complaint under Rule 12(b)(6). The plaintiffs have appealed from the judgment dismissing their claims.

## I

### Dismissal v. Summary Judgment

The accountants appended certain documents to their memorandum supporting their dismissal motion that plaintiffs did not attach to their complaint. They argued that the motion justice properly could consider these documents in deciding their Rule 12(b)(6) motion because plaintiffs had incorporated them by reference when they mentioned the previous *Bowen Court I* litigation in their complaint.

It is certainly true that documents attached to a complaint will be deemed incorporated therein by reference. *See* Super. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Thus, a motion justice may

properly consider and refer to such documents in deciding a Rule 12(b)(6) motion. The documents that the accountants relied on, however, including their 1997 DEPCO settlement agreement, were not attached to plaintiffs' complaint or to any other pleading. Rather, the accountants appended them to the legal memorandum they filed in support of their motion to dismiss the complaint. Thus, the documentation relied on by the accountants in their dismissal motion and submitted to the court for its consideration was not incorporated within the filed pleadings, which included only plaintiffs' complaint. (Because the accountants opted to pursue a Rule 12(b)(6) motion, they never filed an answer or counterclaim.)

■ The mere fact that a pleading mentions or refers to a document—without attaching it to the pleading—does not cause that document to be incorporated by reference as if the pleader had appended it to the pleading. *See* Rule 10(c); *see also* 1 Kent, *R.I. Civ. Prac.* § 10.3 at 100 (1969) (recognizing that documents incorporated by reference in a complaint must be referred to explicitly *and* "the exhibit annexed to the complaint"). And there is no exception to this rule when the documents submitted constitute other court filings or pleadings from previous court cases—even those that involve the same parties. *See DiBattista v. State Department of Children, Youth & Families*, 717 A.2d 640, 642 (R.I.1998) (mem.). Because the accountants relied on documents outside the complaint in filing their Rule 12(b)(6) motion, the Superior Court motion justice either should have excluded these documents from the court's consideration or notified the parties that she would consider them in deciding the pending motion. In any event, when the motion justice failed to exclude them from her consideration, she thereby automatically converted the dis-

missal motion into one for summary judgment under Rule 56. *See* Rule 12(b) ("If on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and *all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.*" (Emphases added.))

Here, the motion justice noted that in connection with the dismissal motion the accountants submitted to the court documents beyond the pleadings—yet she did not exclude them from her consideration. Under these circumstances, conversion of the dismissal motion to one for summary judgment was automatic under the rules. Moreover, plaintiffs should have been afforded proper notice of this conversion and given "reasonable opportunity to present all material made pertinent to such motion by Rule 56"—as per Rule 12(b).

■ Nevertheless, because plaintiffs failed to raise any such lack-of-reasonable-notice argument to the motion justice or on appeal, they have waived this issue as a potential assignable error. Moreover, any error committed by the motion justice in this regard would appear to have been harmless because the record does not reveal (and plaintiffs have not argued) that plaintiffs suffered any prejudice from the court's consideration of documents outside the pleadings without giving them a reasonable opportunity to present all material pertinent to a Rule 56 summary-judgment motion. Thus, even though the motion justice should have entered an order deciding this motion on summary judgment, it does not appear to us that plaintiffs suffered any prejudice from the fact that the

motion justice instead merely issued an order dismissing the claims under Rule 12(b)(6) rather than under Rule 56.

## II

## The Accounting Malpractice Statute of Limitations Bars These Negligence Claims Despite the Lack of Contractual Privity Between Plaintiffs and the Accountants

█ It is undisputed that plaintiffs failed to sue the accountants within any of the three-year periods provided for in § 9–1–14.1, which contains the statute of limitations for asserting accounting-malpractice claims. A claimant cannot evade these time bars merely by failing to mention the word "malpractice" when drafting the pleading in question. *Cf. Vigue v. John E. Fogarty Memorial Hospital,* 481 A.2d 1 (R.I.1984) (holding that when the alleged negligence constituted a necessary, central, and integral part of the challenged professional services, the appropriate malpractice statute of limitations applied to the claims in question rather than some other period of limitation). Moreover, for the purpose of deciding what statute of limitations applied to the claims at issue, no contractual relationship between the plaintiff and the professional firm or individuals in question was required for the negligence claims to fall within the applicable malpractice statute of limitations. *See Dionne v. Baute,* 589 A.2d 833, 835–36 (R.I.1991) (recognizing that § 9–1–14.1 covered a medical-malpractice claim against a consulting physician who lacked any contractual or professional relationship with the patient or the plaintiff). Accord *Merchants National Bank v. Morriss,* 269 F.2d 363, 366 (1st. Cir.1959) (holding that the statute of limitations for medical malpractice barred plaintiff's complaint alleging negligence despite the lack of contractual privity or a "doctor-patient" relationship between the parties). As the First Circuit observed in *Morriss:*

> "It seems to us that the true distinction of 'malpractice' actions as the word was used in [the applicable malpractice statute], must be the especial standard of care and skill which the law imposes on a person purporting to practice the art [in question]. * * * It is clear that no contract is required to impose this standard." *Morriss,* 269 F.2d at 366.

Thus, when as here, the negligence claims against professional defendants challenge the quality, effectiveness, nature, or propriety of the professional services rendered, such claims are subject to the applicable malpractice statute of limitation, regardless of whether the claimants can establish contractual or professional privity with the professional defendants.

For these reasons, even though plaintiffs lacked any contractual privity with the accountants in question, we hold that to assert malpractice or negligence claims against them, they had to comply with the applicable statute of limitations for filing accounting-malpractice claims.[2] Their fail-

---

**2.** Holding only that strict privity is not required for aggrieved third parties to bring suits against accountants alleging professional malpractice or negligence, we reserve for another day the task of deciding exactly which third-party claimants can file such suits and what form of relationship with the accountants or their work product, if any, should be required for non-clients to maintain such a cause of action. We would simply note in passing what the United States Supreme Court has observed previously: "[b]y certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a *public* responsibility transcending any employment relationship with the client." *United States v. Arthur Young & Co.,* 465 U.S. 805, 817, 104 S.Ct. 1495, 1503, 79 L.Ed.2d 826, 836 (1984). (Emphasis in original.) Moreover, our re-

ure to do so barred the negligence claims in this case.

## III

### Section 42–116–40 Conferred Immunity on the Accountants When They Entered into a Judicially Approved Good–Faith Settlement With DEP-CO With Respect To Claims Challenging the Same Misconduct That Was the Subject of Plaintiffs' Indemnification Claim

#### A. Failing to Include the Indemnity Argument in the Prebriefing Statement

■ The accountants argue that plaintiffs' failure to raise the indemnity issue in their prebriefing statement of the case constituted a waiver of this issue on appeal. Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure required plaintiffs to file a statement of the case with the clerk of the Supreme Court within twenty days of docketing this appeal, containing "a summary of the issues proposed to be argued on appeal." The plaintiffs' Rule 12A statement, however, did not identify the Superior Court justice's dismissal of the indemnity claim as one of the issues they proposed to argue on appeal to this Court. Nevertheless, plaintiffs later included this issue in their brief as one of the asserted errors committed by the motion justice.

We have repeatedly held, consistent with Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure, that a party's failure to include a particular issue in his, her, or its brief on appeal results in a waiver of that issue. *See Roe v. Gelineau,* 794 A.2d 476, 482 n. 6 (R.I.2002); *Wilkinson v. State Crime Laboratory Commission,* 788 A.2d 1129, 1131 n. 1 (R.I. 2002). Indeed, Rule 16(a) includes language embodying this rule, providing that "Errors not claimed, questions not raised and points not made [in a party's brief] ordinarily will be treated as waived and not considered by the court."

We decline, however, to extend this waiver rule to arguments not raised in a party's Rule 12A statement when such arguments are later included in a party's brief or supplemental show-cause statement.[3] Usually, as here, the appellee will

---

search reveals that, as of the year 2000, only two states, Pennsylvania and Virginia, still retained the strict privity rule, requiring a direct contractual relationship to exist between an accountant and a complaining party for the latter to sue the accountant for professional negligence or negligent misrepresentation. *See* Carl Pacini, et al, *At the Interface of Law and Accounting: An Examination of a Trend Toward a Reduction in the Scope of Auditor Liability to Third Parties in the Common Law Countries,* 37 Am. Bus. L.J. 171, 175–76 (2000). Other courts considering this issue usually have relied upon one of at least three different alternative legal standards for determining whether non-clients can maintain a cause of action for negligence against accountants. *Id.* These include the so-called near-privity test, first developed in *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441, 445–46 (1931); the "known users [of the accountants' work product] or the Restatement

[ (Second) *Torts* § 552 at 126–27 (1977) ] rule;" and the "reasonable foreseeability rule." *Pacini,* 37 Am. Bus. L.J. at 175–76. Given our disposition of this case on statute-of-limitations grounds, we decline to decide which if any of these tests is the appropriate one to apply when assessing the viability of third-party negligence claims against accountants.

**3.** For cases assigned to the show-cause calendar or for potential disposition at a conference of the Court in accordance with Article I, Rule 12A(3)–(5) of the Supreme Court Rules of Appellate Procedure, the supplemental show-cause statement, as described in Rule 12A(4), together with the prebriefing statement, serves as the functional equivalent of the brief. Thus, any asserted error that is not included in one of these submissions shall be grounds for deeming it to be waived.

have ample opportunity to respond to such arguments. And even though Rule 12A(1) requires the appellant to summarize those issues "proposed to be argued on appeal," it conspicuously omits the above-quoted waiver language contained in Rule 16(a). Moreover, the prebriefing conference itself can cause the parties to confront or address new issues, to drop one or more arguments previously raised, or to refocus their appellate submissions to meet the questions, comments, or other problems with the record that may have surfaced for the first time at the conference. *See* Rule 12A(3). As a result, we hold, plaintiffs have not waived their indemnity arguments, and they are properly before this Court on appeal. We reserve the right, however, in an appropriate case—either on our own motion or on the motion of an appellee—to sanction an appellant for failing to include issues in a prebriefing statement that are later included in a brief or supplemental show-cause statement, especially when they could have and should have been addressed in the prebriefing statement, and to fashion other appropriate relief for an appellee who can show prejudice in such circumstances. But this is not such a case.

## B. The 1997 Settlement Between DEPCO and the Accountants Bars the Indemnity Claim

Section 42–116–40 of the Rhode Island Depositors Economic Protection Act, provides in pertinent part as follows:

"Notwithstanding any provisions of law to the contrary, a person, corporation, or other entity who has resolved its liability to the Rhode Island Depositors' Economic Protection Corporation, the receiver of Rhode Island Share and Deposit Indemnity Corporation or the receiver of any state-chartered financial institution in a judicially approved good faith settlement is not liable for claims for contribution or equitable indemnity regarding matters addressed in the settlement."

■ Pursuant to § 42–116–40, once any parties have consummated a good-faith settlement with DEPCO and that settlement is judicially approved, the settling parties are immunized from any contribution or equitable-indemnity claims "regarding matters addressed in the settlement." Here, in 1997, the accountants settled claims brought by DEPCO and others charging them with professional negligence in connection with their accounting work for the credit union and others.

■ The matters addressed in the 1997 settlement between DEPCO and the accountants included all "claims which were asserted or could have been asserted" by DEPCO against the accountants in the lawsuit that DEPCO had filed against them in Superior Court. Among the claims that DEPCO asserted against the accountants in that lawsuit were claims for alleged negligence in providing accounting services to certain financial institutions, including their preparation of audits and financial reports for the credit union and the Rhode Island Share and Deposit Indemnity Corp. (RISDIC). Thus, the same conduct that constituted the basis for plaintiffs' equitable-indemnification claim against the accountants in this lawsuit was part and parcel of the alleged misconduct that formed the basis for the 1997 settlement between DEPCO and the accountants.

Also, the mere fact that the 1997 settlement agreement included a provision requiring DEPCO to indemnify the accountants if any third party sued them in connection with matters addressed in the settlement did not prove, as plaintiffs suggest, that the parties to that settle-

ment must have believed that such claims would not be subject to the statutory immunity provided for in § 42–116–40. The accountants were entitled to negotiate for and obtain as part of their settlement with DEPCO whatever supplemental protection that they believed might be prudent or advisable to insulate themselves from the threat of incurring double liability or additional defense costs in connection with having to relitigate the malpractice claims that they had settled with DEPCO.

Moreover, it would make little sense as a matter of legislative interpretation to construe § 42–116–40 as requiring DEPCO to indemnify the accountants for their liability to repay plaintiffs' outstanding loan balance to DEPCO. Such a result would mean that DEPCO would have to absorb the losses created when plaintiffs defaulted on the credit union loan and the accompanying loan guarantees. Such an absurd result would confound the very purpose of DEPCO's existence—namely, to purchase and recover the assets of failed financial institutions forced into receivership, thereby allowing DEPCO to make "payment to the depositors of the institutions certain amounts in respect of their deposit liabilities * * *." Section 42–116–2(c); *see also In re Advisory Opinion to the Governor (DEPCO)*, 593 A.2d 943, 946 (R.I.1991) (describing DEPCO as created "to remedy the economic disaster arising from the failure of the Rhode Island Share and Deposit Indemnity Corporation (RISDIC) and the subsequent banking crisis").

In sum, the subject matter of this complaint was substantially identical to the professional negligence and negligent misrepresentation claims that DEPCO asserted against the accountants in the litigation that led to the 1997 settlement between DEPCO and the accountants. In both cases, the claims in question included ones that arose out of the accountants' providing professional services to the credit union and RISDIC from 1982 to 1990. Thus, the Superior Court properly ruled that § 42–116–40 barred the plaintiffs' attempt to obtain indemnification from the accountants.

### Conclusion

Given our disposition of this appeal, we have no need to reach and decide the parties' other arguments. For these reasons, we affirm the Superior Court's judgment and deny the appeal.