March 26, 2019

**Supreme Court**

No. 2017-229-Appeal.
(PB 13-2069)

The Rhode Island Industrial-Recreational     :
     Building Authority

v.                              :

Capco Endurance, LLC et al.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

The Rhode Island Industrial-Recreational      :
      Building Authority

               v.                 :

Capco Endurance, LLC et al.      :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**    The plaintiff, The Rhode Island Industrial-Recreational Building Authority (IRBA), appeals from an April 27, 2017 judgment in Providence County Superior Court entering judgment for Feeley & Driscoll, P.C. (Feeley) on all claims by IRBA and reflecting the previous grant of summary judgment in favor of Feeley by that court.[1]  IRBA avers that the hearing justice erred in holding that Feeley did not owe a duty of care to IRBA as a third-party with respect to what IRBA alleges was a negligently prepared report by Feeley, an accounting firm, on which IRBA posits it relied.  Initially, IRBA argues that this Court should adopt the "Restatement Rule" for assessing whether or not a duty exists "between an accountant-auditor and an aggrieved third party * * *."  It proceeds to contend that the hearing justice misapplied the Restatement Rule and thus erred in granting summary judgment in Feeley's favor.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1]    The instant appeal addresses only the plaintiff's contentions against defendant Feeley & Driscoll, P.C.  The other named defendants are not parties to this appeal.

- 1 -

# I

## Facts and Travel

The facts in this case are largely undisputed. In setting forth those facts, we draw upon the bench decision of the hearing justice as well as other documents contained in the record. We shall summarize in chronological order the transactions which form the factual basis of this case.

Feeley is an accounting firm that prepared audited annual financial statements for Capco Steel, LLC and Capco Endurance, LLC (collectively Capco). The report at issue in this case is the report prepared by Feeley for Capco for the year 2009 (the 2009 Audit Report). It is that report which IRBA contends it relied on and which it further contends was negligently prepared by Feeley.

In February of 2010, Webster Bank (Webster) agreed to provide Capco with a twenty million dollar revolving line of credit. As part of that agreement, Webster also agreed to make a six million dollar term loan to Capco by purchasing six million dollars of bonds from the Rhode Island Industrial Facilities Corporation. IRBA agreed to insure those bonds up to the amount of five million dollars. Accordingly, two separate transactions ensued—one for the line of credit and one for the bonds.

In March of 2010, the twenty million dollar line of credit involving Capco and Webster closed (the original line of credit transaction). Webster's "Summary of Committed Terms and Conditions," which was given to Capco before the closing on that loan, included the requirement that Capco provide the bank over the course of the term of the loan "annual CPA-prepared, audited consolidated financial statements * * *."

In April of 2010, after the original line of credit transaction closed but before the bond transaction involving IRBA closed, Feeley issued the 2009 Audit Report to Capco, wherein it

indicated that Capco had earned a profit of $552,000 in 2009. Subsequently, on June 15, 2010, the bond transaction closed (the original bond transaction). Significantly, Capco did not provide IRBA with a copy of the 2009 Audit Report either at or before the closing on the original bond transaction, although a copy of the 2009 Audit Report was provided to IRBA sometime thereafter. Given that the basis of IRBA's case against Feeley is IRBA's alleged reliance on the purportedly negligently prepared 2009 Audit Report, it is undisputed that we are *not* concerned in this action with IRBA's reliance on the 2009 Audit Report with respect to either the original line of credit transaction or the original bond transaction; IRBA could not have relied on a document it did not have.

In early 2011, Capco sought to extend its revolving line of credit to twenty-three and a half million dollars for a period of six months (the first "overline" request). In March of 2011, Capco and Webster requested IRBA's consent to the temporary extension, and IRBA did consent (the first credit increase). At that time, IRBA had been provided with the 2009 Audit Report. IRBA contends that it relied on the 2009 Audit Report in approving the first credit increase. Feeley's counsel agreed at oral argument before this Court that, for the purpose of the instant appeal, we need be concerned only with IRBA's alleged reliance on the 2009 Audit Report with respect to the first credit increase; it is that transaction, and only that transaction, that is at issue in this case. Specifically, we must determine whether or not Feeley owed a duty of care to IRBA with respect to IRBA's alleged reliance on the 2009 Audit Report in consenting to the first credit increase.

In June of 2011, Capco's relationship with Feeley had been terminated, and Capco eventually hired a different auditing firm. IRBA contends that the auditing firm that succeeded Feeley indicated that the 2009 Audit Report was erroneous and that Capco had actually lost

approximately one and a half million dollars in 2009. Feeley does not concede that the 2009 Audit Report was erroneous or negligently prepared.

In August of 2011, a request was again made to IRBA to consent to a further extension of Capco's line of credit to over twenty-eight million dollars (the second "overline" request), and IRBA was also asked to subordinate its security interest to that of Webster. IRBA agreed to both requests (the second credit increase).

Ultimately, in March of 2012, Capco failed to make required payments on the bonds, thus triggering IRBA's obligation as the insurer of five million dollars worth of the bonds.

On May 1, 2013, IRBA filed the instant action against Capco, Feeley, and numerous other defendants. For the purposes of the instant appeal, we are concerned with IRBA's allegations of negligence only as they relate to Feeley.

In August of 2015, Feeley moved for summary judgment. In a January 15, 2016 order, the hearing justice granted the parties additional time for discovery until February 29, 2016, and he permitted Feeley to file a revised motion for summary judgment after February 29, 2016. In accordance with that order, on October 20, 2016, Feeley renewed its motion for summary judgment, which was predicated on its contention that it did not owe a duty to IRBA with respect to the 2009 Audit Report.

On March 3, 2017, the hearing justice rendered a bench decision granting Feeley's renewed motion for summary judgment. The hearing justice limited his decision to addressing the issue of whether or not Feeley owed a duty to IRBA as a matter of law. The hearing justice acknowledged that this Court had not as of then opined on what test should be applied to determine whether or not a duty exists between an accountant/auditor and a third party (*i.e.*, a person or entity that was not at the relevant point in time a client of the accountant/auditor).

- 4 -

After referencing the three different tests employed by various other courts, the hearing justice chose to apply the one which he characterized as "the Restatement approach" (the Restatement rule), determining that it "struck a proper balance * * *." The hearing justice detailed the Restatement rule as follows:

> "The Restatement (Second) of Torts § 522 limits an accountant's liability for negligently prepared financial statements to loss incurred:
> "(a) [B]y the person or one of a limited group of persons for whose benefit and guidance acts to supply the information * * * and
> "(b) [T]hrough reliance upon it in a transaction that he intends the information to influence * * * or in a substantially similar transaction." (Internal quotation marks omitted.)

The hearing justice then concluded that the first credit increase and the second credit increase were "non-substantially similar" to the original bond transaction.[2] He noted that it was the original bond transaction that Feeley "might have known of when it issued the 2009 audited financials." Thus, he then held that, under the Restatement rule, Feeley owed no duty to IRBA.

On April 10, 2017, an order entered granting Feeley's renewed motion for summary judgment. Subsequently, on April 27, 2017, judgment entered in Feeley's favor on all of IRBA's claims against it. IRBA filed a timely notice of appeal.

---

[2] We note that IRBA points to the fact that the hearing justice referenced both credit increases in making his determination as to substantial similarity pursuant to the Restatement rule, whereas, as IRBA notes, the second credit increase is not and was not at issue with respect to IRBA's negligence claim against Feeley. Even accepting IRBA's contention, that fact, in and of itself, does not constitute reversible error since we may affirm on grounds other than those relied upon by the hearing justice. *See Miller v. Metropolitan Property and Casualty Insurance Co.*, 111 A.3d 332, 339 (R.I. 2015) ("[I]n reviewing the trial justice's legal determinations, this Court has a prerogative to affirm a determination of a trial justice on grounds different from those enunciated in his or her decision[,] as well as a prerogative to overturn such a determination on different grounds.") (internal quotation marks omitted).

- 5 -

## II

## Standard of Review

A grant of a motion for summary judgment will be reviewed by this Court in a *de novo* manner. *Newstone Development, LLC v. East Pacific*, *LLC*, 140 A.3d 100, 103 (R.I. 2016). We employ "the same standards and rules used by the hearing justice." *Id.* (internal quotation marks omitted). As such, "[w]e will affirm a [trial] court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). The burden is on the nonmoving party to prove "by competent evidence the existence of a disputed issue of material fact and [he or she] cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (internal quotation marks omitted). And it is a fundamental principle that "summary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *." *Id.* (internal quotation marks omitted).

## III

## Analysis

As we have repeatedly indicated, to prevail on a negligence claim, a plaintiff must prove "four elements: (1) a legally cognizable duty owed by defendant to plaintiff; (2) breach of that duty; (3) that the conduct proximately caused the injury; and (4) actual loss or damage." *Rhode Island Resource Recovery Corp. v. Restivo Monacelli LLP*, 189 A.3d 539, 546 (R.I. 2018) (internal quotation marks omitted); *see also Wells v. Smith*, 102 A.3d 650, 653 (R.I. 2014).

We have often observed that "issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." *Correia v. Bettencourt*, 162 A.3d 630, 635 (R.I. 2017) (internal quotation marks omitted). However, we are confronted in the instant case with a question only as to the duty of care, and we have distinguished the duty prong of the negligence analysis, holding that whether or not a duty of care exists in any given case is *a question of law* to be addressed on a "case-by-case basis." *Id.* (internal quotation marks omitted); *see Martin v. Marciano*, 871 A.2d 911, 915 (R.I. 2005) ("A legal duty is a question of law that the court alone is authorized to determine."); *see also Wyso v. Full Moon Tide, LLC*, 78 A.3d 747, 750 (R.I. 2013). For that reason, the question of duty is amenable to a determination on summary judgment. "If the court finds that no duty exists, the trier of fact has nothing to consider and a motion for summary judgment must be granted." *Correia*, 162 A.3d at 635 (internal quotation marks omitted).

We begin by addressing what rule should be applied to determine whether a duty of care existed in this case.

## A

### The Restatement Rule

In our opinion in *Bowen Court Associates v. Ernst & Young, LLP*, 818 A.2d 721 (R.I. 2003), we held that strict privity was not required "for aggrieved third parties to bring suits against accountants alleging professional malpractice or negligence * * *." *Bowen Court Associates*, 818 A.2d at 727 n.2. However, we "reserve[d] for another day the task of deciding exactly which third-party claimants can file such suits and what form of relationship with the accountants or their work product, if any, should be required for non-clients to maintain such a cause of action." *Id.* That day has now come.

In deciding what standard to apply to determine whether a duty of care exists in a third-party accountant/auditor malpractice action, "[o]ther courts considering this issue usually have relied upon one of at least three different alternative legal standards * * *." *Id.* at 728 n.2. We have detailed those standards as follows: (1) "the so-called near-privity test, first developed in *Ultramares Corp. v. Touche*, * * * 174 N.E. 441, 445-46 ([N.Y.] 1931); [(2)] the known users [of the accountants' work product] or the Restatement [(Second) *Torts* § 552 at 126-27 (1977)] rule; and [(3)] the reasonable foreseeability rule." *Id.* (internal quotation marks omitted); *see also* Carl Pacini et al., *At the Interface of Law and Accounting: An Examination of a Trend Toward a Reduction in the Scope of Auditor Liability to Third Parties in the Common Law Countries*, 37 Am. Bus. L.J. 171, 176-80 (Winter 2000).

The hearing justice applied the Restatement rule in the instant case, and both parties agree that the Restatement rule was correctly chosen by the hearing justice as the best analytical approach. After careful consideration of the three different standards relied upon by other courts, we are in wholehearted agreement with the hearing justice and the parties as to the preferability of the Restatement rule.

The near-privity test "limits an accountant's liability exposure to those with whom the accountant is in privity or in a relationship sufficiently approaching privity." *Nycal Corp. v. KPMG Peat Marwick LLP*, 688 N.E.2d 1368, 1370 (Mass. 1998) (internal quotation marks omitted); *see also Ultramares Corp. v. Touche*, 174 N.E. 441, 445, 446 (N.Y. 1931). The near-privity rule provides for considerably narrower circumstances wherein an accountant/auditor would be potentially liable to a third party for negligence. But, in our judgment, those circumstances are too narrow and would not provide an opportunity for recovery by a third party that the accountant/auditor knew was going to rely on his or her work product in a particular

transaction. *See Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 615 (N.C. 1988) (stating that the near-privity rule was "unduly restrictive").

On the other hand, under the reasonable foreseeability rule, "an accountant may be held liable to any person whom the accountant could reasonably have foreseen would obtain and rely on the accountant's opinion, including known and unknown investors." *Nycal Corp.*, 688 N.E.2d at 1370. That test would create expansive liability for accountants/auditors and is not reflective of the reality that, once an accountant/auditor provides a document to his or her client, the accountant/auditor typically does not have complete control over the further dissemination of the document. *Id.*; *see also Raritan River Steel Co.*, 367 S.E.2d at 615. What is more, the reasonable foreseeability rule has been "generally disfavored" by other jurisdictions. *Nycal Corp.*, 688 N.E.2d at 1370.

In our opinion, the Restatement rule is the most sensible middle-of-the-road approach to the question of the extent of potential liability to third parties to which an accountant/auditor should be exposed for alleged negligence on his or her part. The Restatement rule is set forth in the Restatement (Second) *Torts* § 552 at 126-27 (1977), as follows:

> "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> "(2) * * * the liability stated in Subsection (1) is limited to loss suffered
>
> "(a) by the person or one of a limited group of persons *for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it*; and

"(b) through reliance upon it *in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.*"[3] (Emphasis added.)

The Restatement rule "limits an accountant's liability for negligent misrepresentation to those third parties who the accountant actually knows will receive the information, and then, only for transactions that are the same as, or substantially similar to, the ones which the accountant actually knows will be influenced by the supplied information." *North American Specialty Insurance Co. v. Lapalme*, 258 F.3d 35, 40 (1st Cir. 2001). We are in agreement in this regard with the following language in a significant opinion of the Supreme Judicial Court of Massachusetts:

> "[T]he Restatement test properly balances the indeterminate liability of the foreseeability test and the restrictiveness of the near-privity rule. Section 552 recognizes commercial realities by avoiding both unlimited and uncertain liability for economic losses in cases of professional mistake and exoneration of the auditor in situations where it clearly intended to undertake the responsibility of influencing particular business transactions involving third persons." *Nycal Corp.*, 688 N.E.2d at 1372 (internal quotation marks omitted); *see also Raritan River Steel Co.*, 367 S.E.2d at 617.

In our considered judgment, the Restatement rule strikes the appropriate balance between the open-ended nature of the reasonable foreseeability rule and the overly constrained near-privity rule. *See Raritan River Steel Co.*, 367 S.E.2d at 617 ("[The Restatement rule] balances, more so than the other standards, the need to hold accountants to a standard that accounts for their contemporary role in the financial world with the need to protect them from liability that unreasonably exceeds the bounds of their real undertaking."); *see also Bily v. Arthur Young &*

---

[3] We expressly note that, by adopting the Restatement rule, we are not thereby adopting or expressing agreement with every comment and/or illustration that accompanies the published text of the rule—except when we explicitly do so.

*Co.*, 834 P.2d 745, 769 (Cal. 1992). Accordingly, we adopt the moderate approach provided for in the Restatement rule. We shall next proceed to apply the Restatement rule to the issues raised by IRBA on appeal.

**B**

**IRBA's Contentions on Appeal**

In addressing IRBA's contentions on appeal, we wish to be absolutely clear as to exactly what is the question before us. The issue is whether or not, under the Restatement rule, when Feeley produced the 2009 Audit Report, it owed a duty to IRBA with respect to IRBA's use of that report in assessing and approving the first credit increase.

IRBA represents on appeal that it is undisputed that, pursuant to the language contained in § (2)(a) of the Restatement rule, IRBA qualifies as a "person or one of a limited group of persons for whose benefit and guidance" Feeley intended to supply the 2009 Audit Report. Restatement (Second) *Torts* § 552 at 126-27 (1977). IRBA thus restricts the focus of its appellate argument to the language contained in § (2)(b) of the Restatement rule. As such, it frames the issue on appeal as being the question of whether or not IRBA relied on the 2009 Audit Report "in a transaction that [Feeley] intend[ed] the information to influence or [knew] that [Capco] so intend[ed] or in a substantially similar transaction." (Internal quotation marks omitted.)

Specifically, with respect to satisfying that standard, IRBA posits that: (1) the hearing justice "erroneously overlooked IRBA's claim that, because [Feeley] knew and intended that the 2009 audit report would be used by IRBA in making decisions during the term of the Transaction [at issue], [Feeley] may be held liable to IRBA;" (2) the hearing justice "erroneously concluded that [Feeley] had no duty to IRBA under * * * the Restatement Rule based on his finding that the

- 11 -

[original line of credit and bond transactions] and the [first credit increase] were not 'substantially similar;'" and (3) the hearing justice "erroneously overlooked IRBA's claim that [Feeley] owed a duty to IRBA because [Feeley], intending to influence the [first credit increase], authorized Capco to supply information contained in the 2009 audit report for that purpose." We shall address each of IRBA's three contentions in turn.

### 1. The Alleged Expected Use of the 2009 Audit Report during the "[T]erm of the Transaction"

IRBA's first contention on appeal is that the Restatement rule is satisfied in this case because Feeley "knew and intended that the 2009 audit report would be used by IRBA in making decisions during the term of the Transaction," the latter five words referring to the duration of the original line of credit and bond transactions. IRBA stresses the "wide-ranging" business relationship between Feeley and Capco, and it asserts that "it is reasonable to infer that [Feeley] knew when it issued the 2009 audit report that, by requiring Capco to provide Webster and IRBA with the most recent and annual audited financial statements during the term of the Transaction, Webster and IRBA would be relying on Capco's audited financial statements (including the 2009 audit report) during the Transaction for the purpose of making business decisions concerning their respective interests in the Transaction."

In our opinion, IRBA's contention is unavailing. IRBA is, in essence, requesting that we apply the reasonable foreseeability rule in this case, which rule we have now rejected. *See* Part III.A, *supra*. It was certainly reasonably foreseeable that IRBA might rely on the 2009 Audit Report for another transaction at some point during the life of the original line of credit and bond transactions. However, that is in our judgment not the proper standard to be applied in a case such as this one. Under the Restatement rule, we are concerned with whether the 2009 Audit Report was relied upon in a transaction which Feeley, at the time it released the report,

- 12 -

"intend[ed]" the information to influence or "kn[e]w[ ]" the recipient so intended. Restatement (Second) *Torts* § 552 at 127 (1977); *see also Bily*, 834 P.2d at 770 ("If * * * the [accountant/auditor] 'merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the information provided] on the part of anyone to whom it may be repeated[,]' the [accountant/auditor] bears no legal responsibility.") (quoting Restatement (Second) *Torts* § 552 cmt. *h* (1977)). Indeed, the Restatement rule "limits an accountant's liability for negligent misrepresentation to * * * transactions that are the same as, or substantially similar to, the ones which the accountant *actually knows* will be influenced by the supplied information." *Lapalme*, 258 F.3d at 40 (emphasis added). What is more, "[t]he accountant's knowledge is to be measured at the moment [a report was] published, not by the foreseeable path of harm envisioned by [litigants] years following an unfortunate business decision." *Nycal Corp.*, 688 N.E.2d at 1372-73 (internal quotation marks omitted).

It is undisputed that IRBA, Capco, and Webster did not know, at the time when they closed on the twenty million dollar line of credit and on the bond transaction, that Capco would request a credit increase about a year in the future. How can Feeley possibly have intended, at the time it issued the 2009 Audit Report, that that report would influence a transaction that none of the parties knew was going to take place? *See Lapalme*, 258 F.3d at 40. That would have constituted pure speculation on Feeley's part. We unhesitatingly decline to expose an accountant/auditor to the broad scope of potential liability that IRBA's argument in this regard would create. *See Kohala Agriculture v. Deloitte & Touche*, 949 P.2d 141, 160-61 (Haw. Ct. App. 1997) (addressing the reasonable foreseeability rule and the Restatement rule and stating that "[t]he foreseeable class of persons who can be adversely affected by reliance upon a lawyer or accountant's advice or opinion can be so large as to make liability to third parties a ruinous

- 13 -

and catastrophic kind, a burden that cannot reasonably be imposed on the lawyer or the accountant except for fraud or other intentional misconduct") (quoting *Prosser and Keeton on the Law of Torts* § 107 at 747 (5th ed. 1984)); *cf. Ultramares*, 174 N.E. at 444 (stating, in adopting the near-privity rule, that to do otherwise "may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class"). What is more, the broad nature of the general business relationship between Feeley and Capco on which IRBA so heavily relies does not alter our analysis in this case.

In summation, we have expressly adopted the Restatement rule to determine whether a duty exists between an accountant/auditor and a third party in the context of a negligence claim. It is clear that IRBA's argument focusing on what it characterizes as "the term of the [t]ransaction" simply does not fit within the parameters of that rule. Accordingly, we reject that contention.

### 2. The Allegedly Substantially Similar Nature of the First Credit Increase Transaction to the Original Line of Credit and Bond Transactions

IRBA avers before this Court that Feeley owed it "a duty under the Restatement Rule's 'substantially similar' transaction provision." It contends that the first credit increase was substantially similar to the original line of credit and bond transactions because: (1) there was no change in Feeley's risk exposure due to the fact that the amount of IRBA's insurance commitment remained at five million dollars; (2) the parties remained the same; (3) the first credit increase was only a short, temporary modification; and (4) the 17.5 percent increase in Capco's line of credit was "minor."

In addressing IRBA's contention, we begin by looking to the Restatement rule which provides that recovery in an instance such as the one which is presented in this case is "limited to loss suffered * * * through reliance upon [an audit report] in a transaction that [the

accountant/auditor] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." Restatement (Second) *Torts* § 552 at 127 (1977). Accordingly, it is our role, as we review the hearing justice's grant of summary judgment in a *de novo* manner, to discern whether there is evidence tending to show a genuine issue of material fact relative to whether or not the first credit increase was *substantially similar* to the original line of credit and bond transactions.

In reviewing the issue of whether or not the transactions at issue in this case were substantially similar, we have been enlightened by the opinion of Judge Bruce Selya writing for the United States Court of Appeals for the First Circuit in *Lapalme*, 258 F.3d at 40-45. In that unanimous opinion, in the course of affirming the grant of summary judgment for the defendants (an accounting firm and one of its principals), the court discussed at length how one should comprehend the concept of "substantially similar transactions." *Lapalme*, 258 F.3d at 40, 41. The court observed that the substantial similarity question is "fact-sensitive and requires case-by-case development." *Id.* at 41. It noted that transactions are substantially similar when the "'essential character'—the amount and terms of the credit—has not changed." *Id.* The First Circuit in *Lapalme* proceeded to state, in the course of discussing the issue of substantial similarity, the following:

> "[I]f the amount of the anticipated loan varies slightly, the ensuing transaction nonetheless will remain substantially similar; slight variances do not affect a transaction's essential character. * * * If, however, after the accountant's report is delivered the corporation seeks and receives a much larger loan, the transactions will no longer be substantially similar and the accountant will not be liable to the bank for a careless misstatement. * * *
>
> "In the last analysis, [t]he question [is] one of the extent of the departure that the maker of the representation understands is to be expected. * * * Minor deviations are to be anticipated in complex business transactions, and such deviations ordinarily do

not allow the [auditor] to escape liability to a known third party." *Id.* (internal quotation marks omitted).

After setting forth the just-quoted general normative principles, the First Circuit in *Lapalme* then articulated a two-step analysis to guide the resolution of the substantial similarity analysis. *Id.* First, the Restatement rule "implicitly recognizes that the risk perceived by the accountant at the time of the engagement cabins the extent of the duty that he owes to known third parties." *Id.* The First Circuit went on to state that, with respect to the first step of the substantial similarity analysis, "an inquiring court initially must consider, from the [accountant/auditor's] standpoint, what risks he reasonably perceived he was undertaking when he delivered the challenged report or financial statement." *Id.* In the second step of the analysis, "the court must undertake an objective comparison between the transaction of which the accountant had actual knowledge and the transaction that in fact occurred." *Id.* The First Circuit stated that such a comparison "cannot be hypertechnical, but, rather, must be conducted in light of [t]he ordinary practices and attitudes of the business world." *Id.* (internal quotation marks omitted).

In addressing the two-step analysis so helpfully articulated in *Lapalme*, it is clear that the hearing justice was correct in concluding that IRBA had failed to establish that the first credit increase was a substantially similar transaction to the original line of credit and bond transactions. With respect to the first step in the analytical process, the record indicates that Feeley, in producing the 2009 Audit Report, would have reasonably perceived that it was undertaking a risk that IRBA would rely on the 2009 Audit Report in the bond transaction; the risk involved to IRBA in that transaction was the fact that it was assuming potential liability in the amount of five million dollars. In contrast, there is no basis in the record for concluding that Feeley could have reasonably perceived a risk that IRBA would thereafter agree to extend the

line of credit, even temporarily. While it is true that the monetary amount of IRBA's risk as an insurer was not affected by the first credit increase, it is clear that increasing the line of credit increased the risk that IRBA would be called upon to make payment on the insured bonds (which appears to have been the reason why IRBA was called upon to approve the first credit increase). IRBA has failed to show that the essential character of the transactions had not materially changed between the original line of credit and bond transactions and the first credit increase. *See id.*; *see also Horton v. Portsmouth Police Department*, 22 A.3d 1115, 1122, 1123 (R.I. 2011) ("[W]here the facts suggest only one reasonable inference, the [motion] justice may properly treat the question as a matter of law.") (internal quotation marks omitted).

Step two in the *Lapalme* analysis requires the making of an objective comparison between the first credit increase on the one hand and the original line of credit and bond transactions on the other hand. We note that "the imposition of liability for negligence should not be defeated by modest variances that the [accountant/auditor], given the way in which business transactions typically develop, reasonably could have anticipated." *Lapalme*, 258 F.3d at 44; *see also* Restatement (Second) *Torts* § 552 cmt. *j* at 137 (1977) ("There may be many minor differences that do not affect the essential character of the transaction. The question may be one of the extent of the departure that the maker of the representation understands is to be expected."). However, IRBA has not succeeded in demonstrating that the variances in this case were not more than modest. It is true that the transactions in this case all involved a line of credit and the same three parties—*viz.*, Capco, Webster, and IRBA—but "[s]imply because transactions are of the same general nature (e.g., 'bonds') is not enough to render them substantially similar for purposes of the Restatement rule." *Lapalme*, 258 F.3d at 44. These transactions took place nearly a year apart, and they involved a three and a half million dollar

credit increase for Capco. While IRBA characterizes such an increase as "minor" under *Lapalme*, it is self-evident that a 17.5 percent increase in the credit amount does not qualify as "minor."

Accordingly, in our judgment, after an extensive review of the record and the applicable legal precedent, we can perceive no basis whatsoever for holding that the hearing justice erred in concluding that the first credit increase was not substantially similar, under the Restatement rule, to the original line of credit and bond transactions. Thus, IRBA's contention to the contrary has utterly failed to persuade us.

### 3. Feeley's Alleged "Authorization" of the Use of the 2009 Audit Report for the First Credit Increase Request

IRBA further contends on appeal that "[t]he motion justice erroneously overlooked IRBA's claim that [Feeley] owed a duty to IRBA because [Feeley], intending to influence the [first credit increase], authorized Capco to supply information contained in the 2009 audit report for that purpose." In other words, IRBA posits that, even if the first credit increase is viewed as a separate and not substantially similar transaction, a duty of care was nevertheless owed to IRBA because Feeley had "authorized Capco to supply information contained in the 2009 audit report to the parties to the [first credit increase], knowing that it would be used to influence [the first credit increase transaction]."

IRBA avers that the record reveals that Capco shared its request for the first credit increase with Feeley before submitting that request to Webster and IRBA and that Capco included in that request information from the 2009 Audit Report. IRBA states in its brief before this Court that Capco was required to provide a copy of the request for the first credit increase to Feeley in advance of submitting it to Webster and IRBA because of the terms of the

"Professional Services Agreement" between Feeley and Capco. That agreement reads in pertinent part as follows:

> "If our report on the financial statements being audited is to be published in any manner or if you intend to make reference to [Feeley] in a publication of any type, you agree to submit proofs of the publication to us for review prior to such publication and cooperate with us in our performance of any additional audit procedures we deem necessary in the circumstances, the nature and extent of which will be at our sole discretion."

IRBA then argues that the just-quoted language and other record evidence "provide[ ] support for the liability-inducing inference and conclusion that [Feeley] authorized Capco to use the information contained in the 2009 audit report for the purpose of persuading Webster and IRBA to agree to Capco's * * * request [for the first credit increase]."

We are once again unconvinced by IRBA's argument, even viewing the evidence in the light most favorable to it as the non-moving party. *See Newstone Development, LLC*, 140 A.3d at 103. While we have taken into account the language in the "Professional Services Agreement" and the fact that Feeley was provided by Capco with an advance copy of the request for the first credit increase, those facts do not provide a basis for the conclusion that there was an "authorization" by Feeley for Capco to use 2009 Audit Report data in its request for the first credit increase. Indeed, even if one accepted that every fact being represented by IRBA in its brief before this Court in support of this argument is accurate,[4] Feeley's mere failure to notice that information from the 2009 Audit Report was contained in Capco's request for the first credit increase and/or to specifically object to the use of that information by Capco is not convincing.

---

[4]    For the sake of accuracy, we would note that, as Feeley correctly points out in its brief before this Court, only minimal information from the 2009 Audit Report was actually included in Capco's request for the first credit increase; and, it is not clear from the record whether or not IRBA relied on that minimal information in authorizing the first credit increase.

IRBA has not exhibited why such a chain of events even remotely rises to a level of "authorization" that should lead to Feeley being exposed to possible liability.[5]

We note that IRBA relies on the case of *Reisman v. KPMG Peat Marwick LLP*, 787 N.E.2d 1060 (Mass. App. Ct. 2003).  In the course of holding that a claim for negligent misrepresentation could be maintained by a third party against the auditor in that case, the court emphasized the facts that the auditor "actively participated in the transaction at issue," had a "history of actively participating in such transactions," and had signed a written "statement consenting to the incorporation in [a form for the Securities and Exchange Commission] of its earlier audited financial statements." *Reisman*, 787 N.E.2d at 1076, 1077.  However, the facts of the instant case are readily distinguishable from those in *Reisman* since Feeley did not actively participate in the first credit increase transaction, and the record contains no written consent to the use of the information in the 2009 Audit Report.

Morever, the Restatement rule focuses on what Feeley knew at the time it produced the report, not on what it may have had knowledge of at some later date.  *See Nycal Corp.*, 688 N.E.2d at 1372-73.  We would also emphasize the point that, as other courts have recognized, once a report is given to a client, the accountant/auditor may in actuality have little to no control over to whom that client actually chooses to disseminate the report.  *See Raritan River Steel Co.*, 367 S.E.2d at 616 ("Auditors * * * have no control over the distribution of their reports, and hence lack control over their exposure to liability."); *see also Nycal Corp.*, 688 N.E.2d at 1370.

---

[5]    We need not and do not decide at this time the broader question of whether or not an accountant/auditor could be liable to a third party with respect to a negligently produced report when the accountant/auditor authorized the use of the report in a transaction of which it was not aware at the time the report was produced; we need not address that question because we conclude that the facts of this case fail to establish that there was an authorization. *See Grady v. Narragansett Electric Co.*, 962 A.2d 34, 42 n.4 (R.I. 2009) (noting "our usual policy of not opining with respect to issues about which we need not opine").

It should further be noted that the "Professional Services Agreement" upon which IRBA relies in support of its "authorization" argument in this case speaks only to the *publication* of any "report [by Feeley] on the financial statements being audited;" it certainly does not contain any sweeping statement with respect to Capco's being required to seek Feeley's approval for *any possible future use* of such a report.

Accordingly, in our opinion, IRBA's contention that Feeley owed it a duty of care in this case because Feeley "authorized" the use of the 2009 Audit Report to support the request for the first credit increase is unavailing.

## IV

## Conclusion

We have carefully reviewed the record, and we have given due consideration to the well-presented arguments of the parties. In the final analysis, however, when the Restatement rule is applied to the case before us, it is our unhesitating judgment that the hearing justice did not err in holding that Feeley did not owe a duty of care to IRBA. For that reason, IRBA's negligence claim against Feeley cannot proceed, and summary judgment in Feeley's favor was appropriately granted.

Accordingly, we affirm the judgment of the Superior Court. We remand the record to that tribunal.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | The Rhode Island Industrial-Recreational Building Authority v. Capco Endurance, LLC et al. |
| **Case Number** | No. 2017-229-Appeal. (PB 13-2069) |
| **Date Opinion Filed** | March 26, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Michael A. Silverstein |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Michael T. Eskey, Esq. |
| | For Defendant: <br><br> Susan E. Cohen, *Pro Hac Vice* <br> Susan M. Silva, Esq. <br> Lindsey A. Gil, Esq. |